CATHCART VS. COMSTOCK.

*November 3, 1882 — January 30, 1883*

*Counties — Towns — Constitutional Law — Taxation.*

By ch. 128, Laws of 1874, portions of several towns were detached from Marathon county and constituted a part of the county of Lincoln, created by that act. Provision was made for the apportionment of

the county property, taxes, etc., between the two counties upon the basis of the assessment of 1874, but no express provision was made for the collection of the taxes then assessed from the property in the portions of towns so detached. Ch. 14, Laws of 1875, provided that the treasurers of said towns should collect all the taxes upon the tax rolls in their hands, "notwithstanding portions of the lands and property upon which such taxes are levied and assessed are situated in the county of Lincoln;" that such treasurers should make duplicate returns to the treasurers of the two counties and should pay to the treasurer of Lincoln county all state and county taxes collected in that portion of their several towns in Lincoln county; and that the treasurer of Lincoln county should collect all taxes returned delinquent to him by such town treasurers, and should credit and pay over to them all the town or local taxes so returned delinquent. *Held*:

(1) Ch. 14, Laws of 1875, does not violate the rule of uniformity in town and county government prescribed by sec. 23, art. IV, of the constitution. *McRae v. Hogan*, 39 Wis., 529, distinguished.

(2) Nor is it a special or private law "for assessment or collection of taxes" within the meaning of subd. 6, sec. 31, art. IV, of the constitution. It is, in effect, an amendment of ch. 128, Laws of 1874, and since it would have been valid as a part of that act is valid as a subsequent enactment.

APPEAL from the Circuit Court for *Lincoln* County.

The case is thus stated by Mr. Justice CASSODAY:

"The facts in this case are, in substance and effect, the same as in the case between the same parties, and in which the opinion is filed herewith [see *ante*, p. 590], and hence need not be repeated, except in the following particulars, as, in effect, stated by the plaintiff's attorney, to wit:

"The land covered by the tax deeds, under which the defendant claims title, was never in the town of Jenny, but was in that part of the town of Texas set off from Marathon county, and was included within the limits of the town of Pine River, as designated by ch. 241, Laws of 1876. By virtue of ch. 14, Laws of 1875, passed February 13, 1875, the town treasurer of the town of Texas, in Marathon county, was authorized to collect the various taxes for the year 1874, on his roll upon taxable property then in Lincoln county,

including the taxes herein complained of by this plaintiff, and the said town treasurer, residing in the town of Texas, in Marathon county, proceeded to collect the taxes of said year 1874 on the property formerly within said town, but then a part of Lincoln county, and returned to the treasurer of Lincoln county the moneys by him collected as aforesaid, and returned as delinquent to said county treasurer all lands in said part of said town in Lincoln county, including the land of the plaintiff in question in this suit, upon which the taxes for said year had not been paid. No tax roll or warrant for the collection of said taxes for said year on said property in that part of said town of Texas set off into Lincoln county was ever made out or delivered, except the one by the said town clerk of said town of Texas, in Marathon county, to the town treasurer of said town in Marathon county, as aforesaid, pursuant to ch. 14, Laws of 1875.

" The three several tax deeds, each of which constitutes a separate cause of action herein, and each of which this action was brought to set aside, were issued upon the assessments, levies, and sales made, and were recorded, at the same times, respectively, as the three first tax deeds in the other action. Each of said three several causes of action was demurred to, as in the other action, and from an order sustaining such demurrer the plaintiff appealed."

*N. H. Clapp*, for the appellant.

*Henry C. Hetzel*, as attorney, and *J. C. Spooner*, of counsel, for the respondent.

CASSODAY, J. Most of the questions involved in this case have also been determined in a suit between the same parties in which an opinion is filed herewith. [*Ante*, p. 590.] The reasons for such determination need not be here repeated. The difference in the two cases, and the further question to be decided, arise out of the fact that the lands affected by that action were situated in the town of Jenny,

which was wholly detached from Marathon and incorporated into Lincoln county, whereas the land here in question was in that portion of the town of Texas which was detached from Marathon and incorporated into the county of Lincoln, first into what became the enlarged town of Jenny therein, and then into what became the town of Pine River, under the act of 1876.

Sec. 3, ch. 128, Laws of 1874, provided, in effect, for the holding of a joint session of the boards of supervisors of the two counties at the next annual meeting after the organization of Lincoln county, which joint session was required, among other things, to determine upon and fix the proportion of all county property, moneys, *taxes*, etc., between the two counties, and that a record thereof should be kept by the clerks of each county, and be binding upon each of said counties as to the rights of each to such property, moneys, *and taxes*, and that such determination should be based upon the amount of assessed valuation of property in each of said counties by the last assessment in said territory. Of course, so far as the land here in question is concerned, the last assessment therein referred to was made by the town officers of what was the town of Texas, in Marathon county, in the spring of 1874, and hence their return of the same was made to the county treasurer of the county of Marathon. By that chapter no express provision was made for the collection of the taxes assessed in 1874, from the property in that portion of Texas so detached, by the town officers thereof, nor for the return of the same to the county treasurer of Lincoln county. To cure that defect, ch. 14, Laws of 1875, was enacted, and that did make express provision for such collection and such return, and expressly require the county treasurer of Lincoln county to collect, as then provided by law, all taxes returned delinquent to him by the town treasurer of what was the town of Texas, as it existed in Lincoln county, and required such

county treasurer of Lincoln county to credit and pay over to the several town treasurers (including the one in Texas) all of the town or local taxes so returned delinquent.

We do not think this act is in contravention of sec. 23, art. IV, of the constitution, for the reasons given in the opinion filed in the other case. *McRae v. Hogan*, 39 Wis., 529, relied on by counsel, seems to be clearly distinguishable, since the act in question does not attempt to take from the possession or control of the town officers any portion of the moneys for town or local purposes, but simply requires the collection of such as should be returned unpaid, and then, when collected, the payment back of the same to such town treasurer.

The only doubt we have had as to the validity of the act is whether it was in violation of that clause of the amendment to the fourth article of the constitution, which, in effect, provides that " The legislature is prohibited from enacting any special or private laws: . . . (6) for assessment or collection of taxes, or for extending the time for the collection thereof." After careful consideration, we are constrained to regard ch. 14, Laws of 1875, in the nature of an amendment to ch. 128, Laws of 1874, providing for the division of Marathon and the erection and organization of Lincoln county. This view is supported by *Warner v. Knox*, 50 Wis., 429. See, also, *Harrison v. Milwaukee*, 51 Wis., 658. Had the substance of ch. 14, Laws of 1875, been contained in ch. 128, Laws of 1874, we apprehend no one would have claimed that such provision rendered the act unconstitutional, as being a special or private law for the assessment or collection of taxes. It was certainly not for the assessment of any tax, for such taxes were assessed prior to the time when Lincoln county was organized. Nor would it have been for the collection of a tax within the meaning of the constitutional provision. It merely would have provided a method by which the collection of taxes previously as-

sessed should not be stopped and rendered impossible by reason of the formation and organization of Lincoln county. Since it would have been competent for the legislature to have incorporated such provision in ch. 128, Laws of 1874, in the first instance, we are convinced that it was competent for them to add the same by the subsequent enactment. It has frequently been held in tax cases that where the legislature might originally have authorized the method adopted, a defect by reason of such an omission may be subsequently supplied. *May v. Holdridge,* 23 Wis., 98; *State v. Myers,* 52 Wis., 633. This principle was recognized, though not applied, in *Kimball v. Rosendale,* 42 Wis., 412. That case, however, is distinguishable from this in that the facts above stated did not there exist.

This disposes of all the questions in the case, except such as are covered by the opinions in the other case between the same parties, and in *Chicago & N. W. Railway Co. v. Langlade Co., infra,* which, to that extent, must be regarded as the opinion, also, in this case.

*By the Court.*— The order of the circuit court is affirmed.