## The People v. William Howard.

*Criminal law — Possession of burglars' tools — Evidence — Cross-examination of respondent—Constitutional law — Amendment of statute by reference to compiler's chapter.*

1. On the trial of a respondent for having burglars' tools in his possession, the officer making the arrest testified to a conversation with respondent, in which he said he hadn't been in the safe business a great while, and was intending to quit it if he hadn't met a certain person, naming him, who induced respondent to go out and do some work for him. The witness further testified that the person named was a burglar, safe-blower, and pick-pocket, which latter testimony is held competent as tending to show what the respondent had been doing in his work for said person, and as bearing upon the intent with which he was carrying the tools found in his possession.

2. When a respondent takes the witness stand in his own behalf he is subject to the same inquiries upon cross-examination as any other witness.

3. How. Stat. § 9175, which was added to chapter 181 of the Compiled Laws of 1857 by Act No. 116, Laws of 1867, is not unconstitutional by reason of the title to said act not being broad enough to cover the added section.

Exceptions before judgment from the recorder's court of Detroit. (Swift, J.) Argued October 17, 1888. Decided November 28, 1888.

Respondent was convicted of having burglars' tools in his possession, with intent, etc. Conviction affirmed, and judgment ordered on the verdict. The facts are stated in the opinion.

*John G. Hawley,* for respondent.

*Moses Taggart,* Attorney General, and *George F. Robison,* Prosecuting Attorney, for the people.

[The points of counsel are stated in the opinion.—
REPORTER.]

MORSE, J.    Respondent was informed against and con-
victed under How. Stat. § 9175, which reads as follows:

" Every person who shall knowingly have in his pos-
session any engine, machine, .tool, or implement adapted
and designed for cutting through, forcing, or breaking
open any building, room, vault, safe, or other depository,
in order to steal therefrom any money or other property,
knowing the same to be adapted and designed for the
purpose aforesaid, with intent to use and employ the
same for the purpose aforesaid, shall, on conviction thereof,
be punished," etc.

The conviction is attacked on four grounds, namely:

1. The admission of incompetent evidence to prove
respondent's guilt.

2. He was subjected to unfair cross-examination.

3. That the evidence did not establish his guilt.

4. The statute above quoted is unconstitutional, and
void.

We will examine these objections in their order.

1. One Conely testified to a conversation with the
accused, in which he swears respondent said to him that
he—

" Hadn't been in the safe business a great while;
that he most always followed the card business, and that
he was going to quit the business six months ago if he
hadn't met this man Fred Barr.  Barr induced him to go
out and do some work with him."

Conely was then asked if he knew what Barr's business
was, and he replied:

" I do.  I have known him for the last six years.  I
saw him last a little over three weeks ago, in jail, in
Jackson, Jackson county, Michigan.  He is a burglar, a
safe-blower, pickpocket, and sneak thief.  He is now in
Jackson State prison."

This evidence was objected to before it was given, and exception taken. We think it was competent to show Barr's business. It tended to show what the respondent had been doing in his work for Barr, and bore upon the intent with which he was carrying the burglars' tools which were found in his possession. It is argued that this was placing before the jury the character of Barr; that the character of respondent could not be attacked by the people, much less could he be injured by proof of the character of his associates. But this was not evidence simply of the character or reputation of Barr. It was proof showing his profession or business. There are persons who follow burglary and theft for a business and as a profession, and who have no other visible means of support; and if the defendant stated that he had been at work for Barr it would seem competent to prove what work Barr was following for a livelihood. That part of the answer which stated that Barr was in State prison was not responsive to the question, and should have been stricken from the case. But no motion was made to that end, and from the defendant's own evidence and statements we do not think its retention in the case resulted in any harm to the respondent.

It must be remembered, also, that the instruments of burglary were undeniably found in his possession. The matter of his guilt of the accusation against him became, therefore, one of intent,—the intent with which he possessed the tools. This intent, being something entirely within the mind of the respondent, must be established, without his admission or confession, entirely from circumstances. There should therefore be accorded the people more than usual latitude in the proof looking towards intent. And in such case it seems to me that the associations of the accused would be a legitimate subject of inquiry.

2. We think, when a respondent takes the stand as a witness in his own behalf, he is subject to the same inquiries, upon cross-examination, as any other witness. The examination in this case was not out of the proper bounds, under this rule.

3. There was testimony, if believed, sufficient to warrant a verdict of guilty.

4. It is claimed that the statute is unconstitutional, under Article 4, § 20, of the Constitution, which provides that no law shall embrace more than one object, which shall be expressed in its title. The section of Howell's Statutes, 9175, was added to our criminal laws by Act No. 116, Laws of 1867. The title of the act reads as follows:

"An act to amend chapter 154 of the Revised Statutes of 1846, being chapter 180 of the Compiled Laws, entitled 'Of offenses against the lives and property of individals.'".

Section 1 of the act provides that the chapter, 154, shall be amended by the adding thereto of a new section, to be known as section number 53. It is claimed that the object of the act, which was to create a new felony, is not expressed in the title; that an amendment means a change or alteration in something already existing, and does not mean creation or the bringing in of substantially new matter; and that the precise purpose of the act should have been clearly stated in the title.

An examination of the Revised Statutes of 1846 and the Compiled Laws of 1857 shows that chapter 154 of the former and chapter 181 of the latter, which is the same as chapter 154, and the one intended to be amended by the act of 1867, are both headed by the compiler "Of offenses against property," and not "Of offenses against lives and property," as in the title of this act. Both have 52 sections, and relate to crimes and offenses, such

as arson, burglary, larceny, simple and compound, embezzlement, fraud, malicious injury, and willful trespass, and the like. This law has been upon the statute-books of our State for 21 years, and should not be overturned, unless it violates the plain letter of the Constitution. Acts entitled "Acts to amend a named act" are not obnoxious to the Constitution, if the amendment fairly comes within the scope of the title of the original act; nor would the amendment of a compiler's section, if the subject-matter of the section was expressed in the title.

But it is said that the chapters and sections of the Compiled Laws have no titles, the titles being placed there by the compilers, and not by the Legislature. This clause of the Constitution was adopted and made a part of that instrument, so that every bill introduced into the Legislature should indicate the subject of its provisions, so that neither the members of the Legislature nor the public should be misled or deceived.

Now, although these titles of the chapters of the Compiled Laws are not adopted by the Legislature, the compilations are, and these titles are familiar and known to all who ever examine the laws. When the chapters are referred to, and they are identical in sections, and the title as used by the compiler is substantially stated, and an amendment is proposed to such chapter, the public are notified that a change is proposed in the law relating to the class of offenses treated of in such chapters, and that amendment may always be made by adding a new section, as an act is amended by adding a new section. The people are challenged by the title to the chapter sufficiently, it seems to me, to call their attention to the bill, if they have any interest in the criminal laws; and it is well known that there is more interest in this class of the laws than any other.

I do not consider this practice one to be indulged in

by the Legislature; but in the present case I think the act of 1867 one that served the purposes of the Constitution in its title, and therefore valid. It cannot be that a more particular title would have prevented its passage. It has been before the people for over 20 years, and has passed into two compilations of the law. No effort has been made to repeal it. All seem to be satisfied with it, except the respondent, who "felt the halter draw." I am not disposed to disturb or destroy it after these years.

The judgment of the recorder's court will pass upon the verdict, as we find no error in the proceedings.

The other Justices concurred.