JOHN C. HOLDEN, PRESIDENT OF THE VILLAGE OF REED CITY, v. THE BOARD OF SUPERVISORS OF OSCEOLA COUNTY.

*Constitutional law—Title of act—Representation of village on board of supervisors.*

1. Act No. 342, Local Acts of 1889, entitled "An Act to amend section three of Act No. 331 of the Local Acts of 1875, entitled

An Act to re-incorporate the village of Reed City,'" and which makes the president of said village *ex officio* a member of the board of supervisors of Osceola county, is constitutional.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—It was decided in *Attorney General v. Preston*, 56 Mich. 177, that it was competent for the Legislature to make the president of a village an *ex officio* member of the board of supervisors of his county, and it is purely a matter of legislative policy when and where such power shall be exercised.

*b*—Most of the great changes in our city organizations have come in under laws which did no more than to indicate by their titles a purpose to incorporate, or re-incorporate, or revise the corporate charter of the municipality dealt with. Anything which is meant to form a permanent element in municipal arrangements is pertinent to the incorporation.

*c*—It is undoubtedly competent to introduce by amendment anything which might have been introduced in the original act.

*Mandamus.* Submitted October 15, 1889. Granted October 25, 1889.

Relator applies for *mandamus* to compel respondents to allow him to sit with them as a member of the board of supervisors. The facts are stated in the opinion.

*Charles A. Withey,* for relator.

*C. O. Trumbull,* for respondents.

CAMPBELL, J. Respondents refuse to allow relator, as president of Reed City, to act with them as a member of the board. Their objection that his election was not certified to them is frivolous. There is no question of his official position. They also rely on a supposed constitutional difficulty in the act conferring on him the powers of a member of the board of supervisors.

It was decided in *Attorney General v. Preston*, 56 Mich. 177 (22 N. W. Rep. 261), that it was competent for the Legislature to make the president of a village an *ex officio* member of the board of supervisors of his county.

If the power exists, as we have held it exists, it is purely a matter of legislative policy when and where it shall be exercised. The only question, therefore, must be whether it has been exercised in this case.

The only constitutional objection presented with any show of plausibility is that the power is granted under an amendment not fairly within the title of the act amended.

In 1875 the Legislature passed an act entitled "An act to re-incorporate the village of Reed City." Local Laws of 1875, p. 527. Instead of doing this by a long statute, with specific powers in detail, the Legislature, as is not uncommon, and as is quite proper, saw fit to make its powers and duties conform to the general village act adopted at the same session, adding only such provisions as were necessary to connect the corporation thus remodeled with the one before existing. It is impossible to discover anything in this action which would differ from an introduction in terms, instead of by reference, of all the provisions of the general statute thus made a part of the village charter. Had the act of 1875 made the president a member of the board of supervisors, it could not be held that such a change would not be as legitimate an element of re-incorporation as any other provision. Most of the great changes in our city organizations have come in under laws which did no more than to indicate by their titles a purpose to incorporate, or re-incorporate, or revise the corporate charter of the municipality dealt with. Anything which is meant to form a permanent element in municipal arrangements is pertinent to the incorporation. In the *Mackinac Case* the power of the president to act as a member of the board of supervisors is found in "An act to re-incorporate the village of Mackinac," adopted by the same Legislature that re-incorporated the village of Reed City. Local Laws of

1875, p. 436. If this was proper in re-incorporating one village, it must have been proper in another, under a title identical in character.

It is undoubtedly competent to introduce by amendment anything which might have been introduced in the original act.

The amendment was, therefore, not beyond the title and was valid. The *mandamus* is granted.

SHERWOOD, C. J., and LONG, J., concurred with CAMPBELL, J.

MORSE, J., *(dissenting).* I think the writ should be denied in this case. By Act No. 331 of the Local Acts of 1875, the village of Reed City was re-incorporated, and placed under the general law for the incorporation of villages in this State. The title of the act was as follows: "An act to re-incorporate the village of Reed City."

Section 1 of the act describes the boundaries of the village, and constitutes the territory a village corporate, to be known by the name of "The Village of Reed City."

Section 2 reads as follows:

"The inhabitants, residents within the boundaries aforesaid, are hereby declared to be a corporation, and shall hereafter be known in law by the corporate name of 'The Village of Reed City;' and by that name they and their successors shall have perpetual succession, capable in law of suing and being sued, complaining and defending, in any court of law or equity, and may make and use a common seal, and alter the same at pleasure, and shall also have power to purchase, hold, and convey such real and personal estate as the purposes of the corporation may require.

"SEC. 3. The officers of said village now in office shall continue in office, with the same powers and duties as are conferred by this act upon like officers, until their successors shall be elected pursuant to the provisions of this act and the general law relating to villages, entitled 'A bill granting and defining the powers and duties of incorporated villages,' approved April 1, 1875.

"SEC. 4. All ordinances and resolutions of said village of Reed City shall continue in force until repealed.

"SEC. 5. Said village of Reed City is hereby made subject to the general law entitled 'An act creating and defining the powers and duties of incorporated villages,' approved April 1, 1875. Said village shall possess all the powers, and be subject to all the duties and liabilities, imposed by said act.

"SEC. 6. Said village of Reed City, as hereby incorporated, shall possess all the rights and property, and be subject to all the debts and liabilities, of the said village as heretofore organized."

This act took immediate effect, and was approved April 16, 1875.

It will be seen that the whole purpose and effect of this act was of an enabling and saving nature. The village of Reed City was at the time of its passage incorporated under a general law, supposed to be unconstitutional; and this method was adopted to save the organization under that law, and to keep the old officers in until their successors could be elected under the new law, and at the same time placing the village, as a re-incorporation, under the new law of April 1, 1875. There are no powers granted, or duties imposed upon, the officers of the village, save such as are to be found in the general law, and an amendment of the general law governs and controls this village, in every respect, the same as it does any other village under it; and this local act is powerless to prevent it. The charter of Reed City has been, ever since this local act was passed, the general law of the State defining the powers and duties of incorporated villages. This local act of 1875 served its purpose in its passage, and has since been obsolete and useless. It is practically dead. No one looks to it to ascertain the powers or duties of the officers of Reed City. The general law is now, and has been since 1875, the organic law of this village.

The Legislature of 1889, in attempting to create the president of the village of Reed City an *ex officio* member of the board of supervisors of Osceola county, did so by an amendment to section 3 of this obsolete act. The title of the act of 1889 is as follows:

"An act to amend section three of Act No. 331 of the Local Acts of 1875, entitled 'An act to re-incorporate the village of Reed City,' approved April 16, 1875."

Section 3, as thus amended, provides that—

"The president of said village, in addition to the powers and duties conferred upon him by said general law for the incorporation of villages, shall be *ex officio* a member of the board of supervisors of the county of Osceola, and he shall attend all the meetings of said board, and be entitled to vote upon all matters that may be brought before the board of supervisors; and for attending all such meetings he shall receive the same compensation authorized by law to be paid to supervisors of townships for similar services, to be audited by the board and paid by the county."

This amended act was ordered to take immediate effect, and was approved March 20, 1889.

It is plainly apparent to me that the author of this act intended to evade the constitutional provision that—

"No law shall embrace more than one object, which *shall be expressed in its title;*"—

And I think that in the attempted evasion this provision has been, practically, clearly violated, and that the act is therefore null and void.

The sole object of this act of 1889 is to make the president of the village a member of the board of supervisors of Osceola county. Is it expressed in the title? Would any one get notice, or even a hint, from an act to amend section 3 of the act to re-incorporate Reed City, that the object was to create a new member of the board of supervisors of Osceola county? Most assuredly not.

The question answers itself in the negative.  If this pro-
posed creation of an additional member of the board of
supervisors of this county in this way had been attempted
by an amendment of the charter of Reed City, which is
the general law for the incorporation of villages, it
would have been necessary to specify in the title the real
object,—the creating of such supervisor by making the
president of the village of Reed City an *ex officio* member
of the board.  The general law could not be amended to
attain this end without a proviso or exception added to
such general law, excepting Reed City out of the opera-
tion of the general law, which does not authorize village
presidents to act as members of the board of supervisors,
or providing that the president of this particular village
should have this privilege, not granted to the presidents
of other villages, and it would have to appear in the title
what the object of this proviso or exception was.  Or, if
an act had been passed without amending any law, pro-
viding what is attempted in the act passed, it would
have been necessary to state its object in the title; that
it was—

"An act to make the president of Reed City, by virtue
of his office, a member of the board of supervisors of
Osceola county,"—

Or words to that effect.  If this thing had been
attempted, as it ought to have been, both honestly and
constitutionally, the people of Osceola county would
have been notified of the attempt, and it would not prob-
ably have succeeded.  The object of the constitutional
provision would have been then complied with.  As it now
stands, it has been not only evaded, but violated, both
in spirit and letter.

This could, it seems to me, have been the only reason
why this thing was done under an amendment of a sec-
tion of an act as dead, for all purposes, as though it had

never been passed, or had been repealed.   The people vitally interested in this legislation, the inhabitants of Osceola county,—save perhaps those residing in Reed City, —were misled and deceived by the title of this act while it was pending in the Legislature.   The very thing against which the Constitution has attempted to guard has been accomplished by this act, and the people have been deprived of their right of protest against obnoxious legislation. And this has been done by a deceptive and fraudulent title.

It will be further noticed that section 3 of the act of 1875 contains no reference whatever to officers thereafter to be elected under the new charter, the general law of the State.   It applies entirely to the officers of the old incorporation, and its express and only purpose is to save them in office until their successors in office are elected. It does not state what village officers there shall hereafter be elected in Reed City, and contains no reference to the powers and duties of the village officers.

This act of 1889 is therefore not germane to the section of the act it seeks to amend; and this section of the act is dead.   The officers it saved have long since passed out of office; and its only use upon the statute book is that it testifies to what it has done, and shows its use.

I do not, under the previous rulings of this Court, question the right of the Legislature to create members of the boards of supervisors out of as many village officers as it may choose; but the policy of such legislation is doubtful, to say the least, and it is known to be against the wish, in almost every case, of the great body of the people interested.   Such legislation is also generally obtained for personal or local ends, rather than for the public good.   It is therefore necessary and proper that this kind of legislation be held to the strict requirements

of the Constitution. Such legislation, in my opinion, must be accomplished, not by a title, which simply gives notice of an amendment to a dead section of an obsolete act,—an enabling and saving act, which has long since served its only purpose, and passed out of memory,—but by an amendment, or an act, which shall express its real purpose plainly in its title, thereby giving due notice to those interested in its object as well as to the members of the Legislature who are to vote upon it.

CHAMPLIN, J., did not sit.