FORT-STREET UNION DEPOT CO. *v.* COMMISSIONER OF RAILROADS.

1. STATUTES—AMENDMENT—OBJECT EXPRESSED IN TITLE—UNION DEPOT COMPANIES—TAXATION.

The general railroad law ( Act No. 198, Laws 1873 ) is entitled "An act * * * to regulate the running and management, and to fix the duties and liabilities, of all railroad and other corporations owning or operating any railroad in this State." Section 3 of article 3 provides for the taxation of corporations subject to the act. By Act No. 228, Pub. Acts 1897, entitled "An act to amend section 3 of article 3 of Act 198,

Session Laws of 1873, as amended, * * * entitled," etc., a radical change was made in relation to the rate of taxation, and union railroad station and depot companies, theretofore taxed under their organic act (Act No. 244, Pub. Acts 1881), were sought to be brought within the terms of said section 3 as amended. *Held*, that the act of 1897 did not contravene the constitutional provision (article 4, § 20) that no law shall embrace more than one object, which shall be expressed in its title, since the title of an amendatory act, which refers by chapter or section to the act amended, giving its title, will support any legislation that would have been permissible in the original act under such title, and a union depot company is a "corporation owning or operating a railroad," within the title of the act of 1873.

2.  SAME—CONSTRUCTION—DOUBLE TAXATION—SLIDING SCALE.

Act No. 228, Pub. Acts 1897, amendatory of the general railroad law, provides that every railroad company and union railroad station and depot company shall pay a specific tax, to be computed in the following manner: "Upon all such gross income not exceeding $2,000 per mile of road actually operated within this State, $2\frac{1}{2}$ per cent. of such gross income; * * * upon all such gross income in excess of $8,000 per mile of the road so operated, 5 per cent. thereof; that * * * union railroad station and depot companies whose earnings are in excess of $20,000 per mile shall pay on all such gross incomes in excess of $20,000 per mile of road so operated 10 per cent. thereof." *Held*, not to provide for a double taxation of depot companies as to their gross earnings in excess of $20,000 per mile, nor to exempt their earnings below that amount, but to require them to pay 5 per cent. upon gross earnings above $8,000 per mile and below $20,000, and 10 per cent. on earnings above $20,000 per mile.

3. UNION DEPOT COMPANIES — MILES OF ROAD OPERATED — HOW COMPUTED.

In determining the miles of railway operated by a union railroad station and depot company, for the purpose of the taxation of its gross income per mile, under Act No. 228, Pub. Acts 1897, there should be a separate measurement for each railroad running into its depot, provided it has as many tracks as there are roads, no two of which are used exclusively by any one road.

*Mandamus* by the Fort-Street Union Depot Company to compel Sybrant Wesselius, commissioner of railroads,

to compute relator's tax according to the provisions of Act No. 244, Pub. Acts 1881. Submitted June 20, 1898. Writ denied October 3, 1898.

The amendatory act of 1897 (Act No. 228), referred to in the opinion, is as follows:

"SEC. 3. Every railroad company, and union railroad station and depot company, owning or operating any railroad situated in whole or in part in this State, shall, on or before the first day of July in each year, pay to the state treasurer, on the statement of the auditor general, a specific tax upon the property and business of such railroad corporation operated within the State, which tax shall be computed in the following manner, namely: Upon all such gross income not exceeding $2,000 per mile of road actually operated within this State, two and one-half per cent. of such gross income; * * * upon all such gross income in excess of $8,000 per mile of the road so operated, five per cent. thereof; that all gross income of union railroad station and depot companies whose earnings are in excess of $20,000 per mile shall pay on all such gross income in excess of $20,000 per mile of road so operated ten per cent. thereof. * * * "

*Edward A. Gott* (*Benton Hanchett*, of counsel), for relator.

*Fred A. Maynard*, Attorney General (*John Atkinson*, of counsel), for respondent.

HOOKER, J. In the year 1881 an act was passed by the legislature entitled "An act to authorize the incorporation of companies for the construction of union railroad stations and depots, with the necessary connecting tracks, and the management of the same." Act No. 244, Pub. Acts 1881 (1 How. Stat. § 3458 *et seq.*). The relator organized under the provisions of that act. Section 21 requires the payment, by companies organized under it, of an annual tax of 2½ per cent. upon their gross earnings, the same to be in lieu of all other taxes, with some immaterial exceptions. Previous to the enactment of this law,

and at all times for many years both before and since, a general law providing for the organization of railroad companies has been in force. At the session of 1897 of the legislature an act was passed entitled:

"An act to amend section 3 of article 3 of Act 198, Session Laws of 1873, as amended by Act 45, Public Acts of 1879, as amended by Act 174, Public Acts of 1891, as amended by Act 129, Public Acts of 1893, entitled 'An act to revise the laws providing for the incorporation of railroad companies, and to regulate the running and management, and to fix the duties and liabilities, of all said roads, and other corporations owning or operating any railroad in this State,' approved May 1, 1873, being compiler's section 3360, Howell's Annotated Statutes of Michigan." Act No. 228, Pub. Acts 1897.

Act No. 198 of the Laws of 1873 (1 How. Stat. § 3313 *et seq.*) was entitled:

"An act to revise the laws providing for the incorporation of railroad companies, and to regulate the running and management, and to fix the duties and liabilities, of all railroad and other corporations owning or operating any railroad in this State."

Article 3 of said act is devoted to the subject of taxation; and section 3 provides that every company shall pay to the state treasurer, upon the statement of the auditor general, an annual tax upon its gross receipts, as therein specified. 1 How..Stat. § 3360. Section 1 requires every company to file a financial statement with the auditor general annually. In 1879, section 1 was amended, whereby it was made the duty of the railroad commissioner to file with the auditor general, annually, a computation of the tax upon such companies. Act No. 45, Pub. Acts 1879. In 1891 an amendment was made to section 3. The amended section provided that "every railroad company formed under the provisions of this act, or which now is or may hereafter be brought under the provisions of the general law of this State for the taxation of railway or railroad corporations, and every railroad company owning or operating any railroad, * * *

shall pay a specific tax," etc. Act No. 174, Pub. Acts 1891. Act No. 129 of the Public Acts of 1893 again amends this section. We are not advised that there is anything in these various amendatory acts which affects the question before us. The law passed in 1897 made a radical change in section 3 of article 3 of the railroad law in relation to the rate of taxation. It also included union railroad station and depot companies, by the following language, viz.: "Every railroad company, and union railroad station and depot company, owning or operating any railroad," etc., shall pay, etc.

The record shows that the railroad commissioner has computed and reported to the auditor general the taxes claimed by him to be due from the relator in July, 1898, under the act last mentioned, and that this computation makes the tax chargeable against the relator much greater than it would be if computed under the provision of law existing prior to the enactment of the law of 1897; and its contention is that such is invalid to the extent that it is attempted to be applied to union railroad station and depot companies, it being claimed that the effect of this act is to make the relator taxable under the general railroad law, when it was not so taxable before, by an act which does not show such object in its title, and, further, that the act has two objects, viz., to increase the rate of taxation against railroad companies, and to bring union railroad station and depot companies under the general railroad law as to taxation, thereby repealing the section providing for taxation in the union railroad station and depot law.

We are of the opinion that it would have been competent for the legislature to bring all corporations owning or operating railroads within the provisions of the original act of 1873, without transgressing the rule that "a law shall have but one object," and that it could have been as lawfully done by enumerating their classes, or possibly their individual names, as by using the term "all companies operating railroads." Cooley, Const. Lim. (6th Ed.) 172. The relator is clearly a corporation operating a rail-

road. As such, it is within the title of the original railroad law of 1873; but it is not within the language of the act as originally passed, either under section 3 of article 3 standing alone, which limited taxation to companies to be organized under that act, or as enlarged by section 13 of article 5, which made section 3 applicable to roads then existing under laws therein enumerated. Section 3 might have been made broader under the title, and included all corporations owning or operating railroads; and, if it might have been done originally under the title, we see no reason for denying the power of the legislature to do the same thing by amendment.

The important question is, What is requisite to the title of the amendatory act? Must it call attention to the fact that the scope of section 3 is to be enlarged, and mention the corporations to be included, either by name or generically, or must every one take notice that section 3 is liable to be amended in any particular, and to any extent, within the terms of the original title? This constitutional restriction upon the power of the legislature is not to be enlarged by construction. Cooley, Const. Lim. (6th Ed.) 175; *State v. Smith*, 35 Minn. 261. Many authorities support the rule that the title of the amendatory act is sufficient, and will support any legislation that would have been permissible under the original title when the law amended was enacted, if the amendatory act refer by chapter or section to the act amended, giving its title, although the practice has been criticised. Thus, in the case of *People* v. *Judge of Superior Court of Grand Rapids*, 39 Mich. 197, such an amendment was sustained, notwithstanding the title incorrectly stated the number of the section sought to be amended. In *People* v. *Gadway*, 61 Mich. 290 (1 Am. St. Rep. 578), Mr. Justice CHAMPLIN says: "In applying the constitutional test to this law, it must be regarded as if section 15 [Act No. 178, Pub. Acts 1883] was embraced in the original when passed; and, if it is embraced in the title of the act of 1881, it is valid; otherwise, not." It is fair to say that it is not clear that the exact ques-

tion before us was discussed in that case, as apparently both court and counsel took it for granted that the case must turn upon the title to the original act.   The case of *Holden* v. *Supervisors of Osceola Co.,* 77 Mich. 202, is also in point, Mr. Justice CAMPBELL saying: " It is undoubtedly competent to introduce, by amendment, anything which might have been introduced in the original act."   The title to the act in that case, as in this, referred to a section, and not to the act.   It was as follows: "An act to amend section 3 of Act No. 331," etc., " entitled," etc.   Act No. 342, Local Acts 1889.   The question was before this court again in *People* v. *Howard,* 73 Mich. 10.   This was a criminal case, and the title was "An act to amend chapter 154 of the Revised Statutes of 1846, being chapter 180 of the Compiled Laws, entitled 'Of offenses against the lives and property of individuals.'" Act No. 116, Laws 1867.   The object of this amendment was to create a new offense, and a felony at that; yet the law was held valid.   The following cases from other States support the rule:  *State* v. *Berka,* 20 Neb. 375; *State* v. *Algood,* 87 Tenn. 163; *State* v. *Ranson,* 73 Mo. 78; *Morrison* v. *Railway Co.,* 96 Mo. 602; *State* v. *Chambers,* 70 Mo. 625; *State* v. *Miller,* 100 Mo. 439. See, also, 23 Am. & Eng. Enc. Law, 281, and note 1, where many authorities are collected.   We think the Michigan cases cited by counsel are distinguishable.   The following cases appear to support their contention:  *State* v. *Tibbets,* 52 Neb. 228 (66 Am. St. Rep. 492); *Tingue* v. *Village of Port Chester,* 101 N. Y. 294; *State* v. *Smith,* 35 Minn. 257.

It is said that, if it was proper to include depot companies within the amendment, it would have been as competent to include street-railway companies; but we think this does not necessarily follow.   The act of 1873 had for its object the organization and maintenance of a well-known class of roads, and it may be that street railroads do not fall within that class; but, whether they do or not, it is obvious that the relator has to do with the identical

kind of railroad that was provided for by that law. Its roads are exactly like the general railroads of the State in construction and equipment, and are designed to be operated in conjunction with them. We are of the opinion, therefore, that the act of 1897 was valid, and that the relator is within its terms.

It is also claimed upon the part of the relator that the provisions of this act should be so construed as to subject union railroad station and depot companies to no specific tax on gross earnings below $20,000 per mile. Our understanding of the act is that the sliding scale applies to both railroad and depot companies, and we think that in the case of the latter a fair construction would require the payment of 5 per cent. upon gross earnings above $8,000 per mile and below $20,000, and 10 per cent. above $20,000 per mile. If the strict letter of the act were to be followed, it may be, as claimed, that it would result in double taxation as to the excess over $20,000 per mile; but we think that immunity from taxation on earnings below that sum is not the only alternative, and that it is not reasonable to suppose that the legislature designed to exempt the gross earnings below $20,000.

It remains to inquire what was meant by the term "upon all such gross income not exceeding $2,000 per mile of road actually operated." To ascertain the number of miles of road operated by a railroad company, should the commissioner take the total linear measurement of all track, including double tracks and sidings, or the distance between *termini;* and, if the latter rule should be followed in cases of railroad companies, should any different rule apply as to union depot companies? The depot company has for its object the erection and management of a depot, wherein various roads approaching the city from different directions shall enter. To accomplish this, it is authorized to build connecting lines of railroad; and it is apparent that these connecting lines must diverge, and, in part at least, consist of separate tracks, running in different, if not opposite, direc-

tions, instead of being parallel tracks upon one roadbed, as is ordinarily the case where double tracks or switches are put in by railroad companies. Justice would seem to demand that these separate tracks be treated as main lines, and that their aggregate of mileage should be returned. By this we do not mean that, where a single track is used by two companies, the length should be doubled; nor do we mean that, where a single railroad company is given exclusive use of a double track, both tracks should be measured; nor that switches should be treated as additional track, to be measured; but that the depot company should be entitled to the measurement of a line for each railroad running into its depot, provided it has as many tracks as there are roads, no two of which are used exclusively by any one road. The relator claims in its brief that its report shows that it has 4.575 miles of main tracks (though the petition shows less); the respondent, that it shows but 1.41 miles. We are unable to determine upon this record whether the computation of the railroad commissioner is justified by the facts or not, as we cannot determine the character of the track described in the return as "double track, main line," and "other tracks;" and the petition itself does not clearly show how much main line it has under our definition.

We think, therefore, that we should deny the writ, without prejudice to a further application if the commissioner shall decline to amend his computation to conform to the just rights of the relator under this opinion. No costs are allowed.

The other Justices concurred.