BINION, *Sheriff*, v. OKLAHOMA GAS & ELECTRIC CO.

No. 1692.   Opinion Filed November 16, 1910.

On Petition for Rehearing March 21, 1911.

(114 Pac. 1096.)

1.  STATUTES—Title—Sufficiency.  The act of May 26, 1908, entitled "An act providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack, gold, natural gas; and declaring an emergency" (Sess. Laws 1907-08, c. 71, art. 2, pp. 640-645), is not repugnant to section 57 of article 5 of the Constitution.

2.  STATUTES—Amendment—Title—Sufficiency.  The act of March 27, 1909 (Laws 1909, c. 38, art. 2), entitled "An act to amend section 6, of the Session Laws of 1907 and 1908, the same being entitled an act providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack. gold, silver or copper, or petroleum or other mineral oil or natural gas; said section 6 of the Session Laws being section 6135 of the General Statutes of the state of Oklahoma, 1908," is not repugnant to section 57, art. 5, of the Constitution.

3.  STATUTES—Amendment—Title—Relevant Provisions.  Section 2 of said act of March 27, 1909, is not repugnant to section 57 of article 5 of the Constitution.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; W. M. Bowles, Judge.*

Action between M. C. Binion, Sheriff, and the Oklahoma Gas & Electric Company.  From a judgment in favor of the latter, the former brings error.  Reversed and remanded, with instructions.

*W. C. Reeves*, Asst. Atty. Gen., for plaintiff in error.
*Flynn, Ames & Chambers*, for defendant in error.

WILLIAMS, J.  The following questions are involved in this case:

(1) Is the act of May 26, 1908 (Laws 1907-08, c. 71, art. 2),

entitled "An act providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack, gold, natural gas; and declaring an emergency," repugnant to section 57 of article 5 of the Constitution?

(2) Is the act of March 27, 1909 (Laws 1909, c. 38, art. 2), entitled "An act to amend section 6 of the Session Laws of 1907 and 1908, the same being entitled an act providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack, gold, silver or copper, or of petroleum or other mineral oil or natural gas, said section 6 of the Session Laws being section 6135 of the General Statutes of the state of Oklahoma, 1908," repugnant to section 57 of article 5 of the Constitution?

(3) Is section 2 of said act repugnant to said section of the Constitution as not being within the purview of the title?

(4) Does said act of May 26, 1908, violate section 19, art. 10, of the Constitution?

1. The title of said act appears to be in accord with section 57, art. 5, Const.; *Brown-Foreman Co. v. Com.*, 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793; *Com. v. Brown*, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; *State ex rel. v. Hooker*, 22 Okla. 712, 98 Pac. 964.

2. The foregoing authorities also settle the question that the title to the act of March 27, 1909, is not repugnant to section 57, art. 5, of the Constitution.

3. In *Com. v. Brown*, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110, involving a question of taxation, it is said:

"It will be observed that it is an amendatory act, and not the original act on the subject. In such case, if the title of the original act is sufficient to embrace the matters covered by the provisions of the act amendatory thereof, it is unnecessary to in-

quire whether the title of the amendatory act would of itself be sufficient. If the title of the original act is sufficient to embrace the matters contained in the amendatory act, whether that of the amendatory act is in itself sufficient is unimportant. *State v. Ranson,* 73 Mo. 78; *St. Louis v. Tiefel,* 42 Mo. 590; *Brandon v. State,* 16 Ind. 197; *Morford v. Unger,* 8 Iowa, 82; *State v. Algood,* 87 Tenn. 163 [10 S. W. 310]; and *Yellow River Imp. Co. v. Arnold,* 46 Wis. 214, 224 [49 N. W. 971]."

Further in said opinion it is also said:

"It is not necessary, therefore, to do more, if so much, in amending and re-enacting or repealing any part of the Code or adding thereto, than refer to the proper chapter and section thereof to be amended or repealed or added to, and adopt and express in the title of the amendatory act the number and subject of such chapter, if the provision of such amendment by the re-enactment or by additional section or sections is germane to the subject of the chapter. *Second German Bldg. Ass'n v. Newman,* 50 Md. 62; *Lankford v. Somerset County Com'rs,* 73 Md. 105, 119 [20 Atl. 1017, 22 Atl. 412], 11 L. R. A. 491, 496; *Heath v. Johnson,* 36 W. Va. 782 [15 S. E. 980]; *Dogge v. State,* 17 Neb. 140 [22 N. W. 348]; *State v. Berka,* 20 Neb. 375 [30 N. W. 267]; *People v. Howard,* 73 Mich. 10 [40 N. W. 789]; and *People v. Parvin* (Cal.) 14 Pac. 783."

This case has been followed by the Supreme Court of Appeals of Virginia in *Morgan's Case,* 98 Va. 812, 35 S. E. 448, and *Bertram v. Com.,* 108 Va. 902, 62 S. E. 969.

In *Commonwealth v. Wilcox et al.,* 69 S. E. (Va.) at page 1030, it is said:

"The case of *Commonwealth v. Brown, supra,* was the subject of annotation and criticism by that eminent jurist, Judge Burks, in 1 Va. Law Reg. at page 118, where the conclusion reached was warmly commended; and that line of decisions has been approved by time, the more just, as well as the most severe, of all critics."

In *State v. Jones,* 9 Idaho, 693, 75 Pac. 819, also involving a question of taxation, *Com. v. Brown, supra,* is not only cited, but the former of the foregoing excerpts is quoted with approval. In *Vineyard v. City Council of Grangeville et al.,* 15 Idaho, 436, 98 Pac. 422, *State v. Jones, supra,* together with the excerpt therein

contained from *Com. v. Brown, supra,* is not only cited with approval, but also followed, wherein it was held:

"If the title to an original act is sufficient to embrace the matters covered by the provisions of an amendatory act, it is unnecessary to inquire whether the title to the amendatory act is, of itself, sufficiently broad and comprehensive to embrace all of the matters contained in the amendatory act; for if the title of the original act is sufficient to embrace the matters contained in the amendatory act, the sufficiency of the title of the amendatory act is unimportant. * * * Under the provisions of section 16, art. 3, of the Constitution of this state, the title of an amendatory act, which amends a section or certain sections of a prior act, is a sufficient title, provided it refers to the section or sections naming the title of the act amended, and the subject-matter of the amendatory act is embraced within the scope of the title of the original act. * * *"

In *State ex rel. Mouton et al. v. Read, Judge ad hoc,* 49 La. Ann. 1535, 22 South. 761, it was held:

"The amendatory act in its title referring to the title of the act amended, or to the section of the Revised Statutes the subject of amendment, but which sets forth in full the act or section as amended, does not violate, but complies with, the constitutional requirements that legislative acts shall not be amended by reference only to their titles. * * * The title of an act, giving that of the act or the number of the section of the Revised Statutes proposed to be amended, complies with the constitutional requirement that the object of the legislative act shall be expressed in its title."

See, also, *Company v. Byrne,* 119 Tenn. 278, 104 S. W. 460; *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520; *Steele County v. Erksine,* 98 Fed. 215, 39 C. C. A. 173; *State ex rel. v. County Com'rs of Duval County,* 23 Fla. 483, 3 South. 193.

The act of May 26, 1908, *supra,* embraces but one general subject and indicates a unity of purpose to provide for the levy and collection of a gross revenue tax, as is specifically authorized by section 12, art. 10, of the Constitution. The act of March 27, 1909, *supra,* amendatory thereto, indicates the same purpose. Said enactment should not be annulled by this court, unless we

are convinced to a moral certainty that it is repugnant to section 57, art. 5, of the Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revisions of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

In *Howell v. State of Georgia,* 71 Ga. 224, 51 Am. Rep. 259, it is said:

"This clause of the Constitution 'does not require that the title should contain a synopsis of the law, but that the act should contain no matter variant from the title.' *Martin v. Broach,* 6 Ga. 27 [50 Am. Dec. 306]. The general object of the law is all that need be indicated by the title. To go further and require every end and means necessary or convenient for the accomplishment of this general object to be enumerated in the title would go beyond the purpose of the authors of this clause. They intended by it, among other things, to remedy a practice 'by which, through dexterous management, clauses were inserted in bills of which the title gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect.' Cooley's Const. Lim. 143. This salutary restriction was never intended to embarrass, but was designe1 to prevent vicious and fraudulent legislation. This constitutional restriction originated in this state, and is first found in the Constitution of 1798. It grew out of a striking incident of our history. The act of the 17th January, 1795, well known as the Yazo act, under the patriotic and commendable purpose of paying the late state troops, and of 'protecting and supporting the frontier settlements,' as its title declared, made a large grant of land to a private company of speculators; and, when the fraud was discovered, it gave rise to a controversy of a very determined and earnest, if not angry, character, which lasted for many years. * * * *"

In *Central of Georgia Ry. Co. v. State of Georgia,* 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518, it is said:

"The manifest purpose, then, of this provision in the Constitution was to prevent a repetition of such a fraud. The object, therefore, was not to prevent comprehensive, but surreptitious, legislation. The other provision that no bill shall contain more than one subject-matter does not appear in the Constitution of 1798, but has since become a part of our constitutional law. Its object was, not so much to prevent surreptitious legislation, as to inhibit the passage of what is often termed 'omnibus' or 'log-rolling' bills. A bill may contain more than one subject, and yet, if its title clearly indicates all its subjects, it will not be apt to mislead the Legislature as to its intent and scope, and cannot therefore be considered surreptitious legislation. Experience, however, taught that it was often the case that many matters were embraced in the same bill, adverse in their nature and having no necessary connection, with the view of combining in their favor the advocates of all, and thus securing the passage of several measures, no one of which could succeed upon its own merits. It was to prevent this dangerous practice that our organic law declares that a bill should contain but one subject-matter."

As has been said in *Howell v. State, supra,* the first time that such a limitation upon the Legislature of a state was incorporated in a Constitution was that of Georgia, in 1798. See, also, *Mayor and Aldermen of Savannah, etc., v. State of Georgia, etc.,* 4 Ga. 38. How can it be said with reason, when the title of the amending bill refers to a specific section of the original act and sets out at length the title thereof, it being understood that anything may be inserted in the amendatory act that could have been properly included under the original title, that any surreptitious legislation was possible under such rule of legislative procedure?

On January 7, 1795, under the title of "An act supplementary to an act entitled 'An act for appropriating a part of the unlocated territory of this state for the payment of the late state troops, and for other purposes therein mentioned; declaring the right of this state to the unappropriated territory thereof, for the protection of the frontiers, and for other purposes,'" a tract con-

sisting of about 3,500,000 acres of land extending from the Chattahoochee to the Yazo river, at the price of 1½ cents per acre, was granted to an association or company. General James Jackson, who was at that time a United States Senator from Georgia, resigned his seat, and coming back home announced his candidacy for the Legislature, with the avowed intention of securing the repeal of said act containing said surreptitious provision. The next Legislature, on February 13, 1796, passed a repealing act, providing that the purchase price be returned, the trade declared null and that said act and all public records of the same should be publicly burned in the presence of the Governor, so that no trace of the same should be left to blot the escutcheon of the state. "At high noon on an appointed day, the Governor, state officials, and whole legislative body marched out of the capitol and formed a circle around a pile of pitch lightwood that had been placed in the middle of the square in front of the new capitol building at Louisville, Ga. With a sun glass, Governor Jared Irwin brought fire from heaven to consume the condemned records. As the clerk of the House of Representatives placed the documents in the flames, he cried with a loud voice in the presence of the assembled multitude: 'God save the state! and preserve her rights!! And may every attempt to injure them perish as these corrupt acts now do!!!'" See Laws of Georgia to 1820, by Oliver H. Prince, at page 515; Life and Times of William H. Crawford, by Shipp, at page 33. See, also, Removal of Cherokee Indians from Georgia, by Lumpkin (Dodd, Mead & Co., N. Y., 1907) pp. 14, 15, 17.

In the Constitution that was framed by the convention of the state of Georgia at Louisville on the 30th day of May, 1798, of which General James Jackson was a member, that there might not be any recurrence of such surreptitious legislation, he caused to be inserted therein the provision: "Nor shall any law or ordinance pass containing any matter different from what is expressed in the title thereof." (Article 1, §17.) Such provision, which is now in one form or another contained in the Constitution

of practically every state, being adopted to shield the people of the commonwealth against fraud and surreptitious legislation, should not by judicial construction become a sword, at the behest of unwilling taxpayers, to cut down revenue bills passed by the sovereign lawmaking body. Whilst section 57, art. 5, *supra,* is mandatory, yet it should receive a reasonable construction, so as to carry out the original intention in framing such provision, i.e., that surreptitious and fraudulent legislation may be prevented without proper and necessary legislation being unreasonably imperiled or annulled.

There is a conflict of authorities as to the proper construction of said provision as applied to such mandatory acts. Alabama, Colorado, Kansas, New York, and Texas are in harmony neither with the authorities herein cited nor with the conclusion reached. But we have adopted that conclusion which we believe to be supported by the best reason and which reasonably and in good faith carries out the spirit of said provision. As was said by Judge Reily, in *Com. v. Brown, supra:*

"It is a grave responsibility for a court or judge to pronounce a solemn and deliberate act of the sovereign lawmaking power unconstitutional and void. It should never be done in a doubtful case, and especially where no great principal of liberty or the security of property 'enshrined in the Constitution of the United States and repeated in that of the state' is involved, but only some rule of legislative action. When it is done, the conflict between the Constitution and the law must be clear and palpable."

It will be noted that general revenue bills are excepted from the operation of said provision. The act of May 26, 1908, is a revenue bill. As to whether it is such as to come substantially within the terms of said exception, it is not essential now to determine.

Conceding that the first act did not meet the requirements of section 19, art. 10, of the Constitution, it seems to have been permissible to cure the defect by amendment. *State v. Corbett,* 61 Ark. 226, 32 S. W. 686; *Ferry v. Campbell,* 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92, and note to *Steele County v. Erskine,*

39 C. C. A. 180. In fact, that does not appear to be seriously controverted by defendant in error.

4. In view of the conclusion hereinbefore reached, it is not essential to determine whether the act in question was in violation of section 19 of article 10 of the Constitution. The Court of Appeals, of Kentucky, however, in construing a similar constitutional provision, held that it did not apply to franchise taxes. *Brown-Foreman Co. v. Com.*, 125 Ky. 402, 101 S. W. 321, 30 Ky. Law. Rep. 793. As to whether the reasons that existed in Kentucky by which the Court of Appeals was induced to reach that conclusion would apply or have any persuasive force in this state, we do not now determine.

It follows that the judgment of the lower court is reversed, and the cause remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.

---

## ON PETITION FOR REHEARING.

On application by the defendant in error, which was assented to by the Attorney General, the petition for rehearing was set for oral argument. Oral argument was made on the part of counsel for the defendant in error, but neither was any oral argument made on the part of counsel for the plaintiff in error, nor has any brief been filed or response made in resistance to said petition for rehearing.

It has been very ably, and earnestly contended on the part of defendant in error that the former opinion delivered in this case should not be adhered to, but that a contrary conclusion ought to be reached.

In addition to the adjudications relied upon by this court in its former opinion, in our research we have found additional adjudiations supporting its former conlusion. In *Union Depot Company v. Commissioner of Railroads*, 118 Mich. 340, 76 N. W. 631, it is said:

"The relator is clearly a corporation operating a railroad. As such, it is within the title of the original railroad law of 1873; but it is not within the language of the act as originally passed, either under section 3 of article.3 standing alone, which limited taxation to companies to be organized under that act, or as enlarged by section 13 of article 5, which made section 3 applicable to roads then existing under laws therein enumerated. Section 3 might have been made broader under the title, and included all corporations operating railroads; and, if it might have been done originally under the title, we see no reason for denying the power of the Legislature to do the same thing by amendment. The important question is. What is requisite to the title of the amendatory act? Must it call attention to the fact that the scope of section 3 is to be enlarged, and mention the corporations to be included, either by name or generically, or must every one take notice that section 3 is liable to be amended in any particular and to any extent, within the terms of the original title? This constitutional restriction upon the power of the Legislature is not to be enlarged by construction. Cooley, Const. Lim. (6th Ed.) 175; *State v. Smith,* 35 Minn. 257 [28 N. W. 241]. Many authorities support the rule that the title of the amendatory act is sufficient, and will support any legislation that would have been permissible under the original title when the law amended was enacted, if the amendatory act refer by chapter or section to the act amended, giving its title, although the practice has been criticised. Thus, in the case of *People v. Judge of Superior Court of Grand Rapids,* 39 Mich. 197, such an amendment was sustained, notwithstanding the title incorrectly stated the number of the section sought to be amended. In *People v. Gadway,* 61 Mich. 290 [28 N. W. 102] 1 Am. St. Rep. 576, Mr. Justice Champlin says: 'In applying the constitutional test to this law, it must be regarded as if section 15 (Act No. 178, Pub. Acts 1883) was embraced in the original when passed; and, if it is embraced in the title of the act of 1881, it is valid; otherwise not.' It is fair to say that it is not clear that the exact question before us was discussed in that case, as apparently both court and counsel took it for granted that the case must turn upon the title to the original act. The case of *Holden v. Supervisors of Osceola County,* 77 Mich. 202 [43 N. W. 969], is also in point; Mr. Justice Campbell saying: 'It is undoubtedly competent to introduce, by amendment, anything which might have been introduced

in the original act.' The title to the act in that case, as in this, referred to a section, and not to the act. It was as follows: 'An act to amend section 3 of Act No. 331,' etc., 'entitled,' etc. Act No. 342, Local Acts 1889.. The question was before this court in *People v. Howard*, 73 Mich. 10 [40 N. W. 789]. This was a criminal case, and title was 'An act to amend chapter 154 of the Revised Statutes of 1846, being chapter 180 of the Compiled Laws, entitled, "Of offenses against the lives and property of individuals."' Act No. 116, Laws 1867. The object of this amendment was to create a new offense, and a felony at that; yet the law was held valid. The following cases from other states support the rule: *State v. Berka*, 20 Neb. 375 [30 N. W. 267]; *State v. Algood*, 87 Tenn. 163 [10 S. W. 310]; *State v. Ranson*, 73 Mo. 78; *Morrison v. Railway Co.*, 96 Mo. 602 [9 S. W. 626, 10 S. W. 148]; *State v. Chambers*, 70 Mo. 625; *State v. Miller*, 100 Mo. 439 [13 S. W. 677]. See, also, 23 Am. & Eng. Enc. Law, 281, and note 1, where many authorities are collected. We think the Michigan cases cited by counsel are distinguishable. The following cases appear to support their contention: *State v. Tibbetts*, 52 Neb. 228 [71 N. W. 990] 66 Am. St. Rep. 492; *Tingue v. Village of Port Chester*, 101 N. Y. 294 [4 N. E. 625]; *State v. Smith*, 35 Minn. 257 [28 N. W. 241]."

This case was also quoted from at length with approval in *Common Council of Detroit v. Schmid*, 128 Mich. at pages 386, 387, 87 N. W. 383, 92 Am. St. Rep. 468, which is in every respect in point. See, also, *Lewis v. State*, 148 Ind. 346, 47 N. E. 675; *Cathcart v. Comstock*, 56 Wis. 609, 14 N. W. 842.

Whilst there is a sharp conflict of authority on this question, and it may be the weight of authority is in favor of the contention of the defendant in error, yet, when the rule which will sustain this law and not bring it in conflict with the Constitution is supported by so many adjudications from courts of eminent standing, and which at the same time will conserve the principle for which such provision has been ingrafted into state Constitutions, we feel that we should not declare this law void. The petition for rehearing is therefore denied.

All the Justices concur.