COMMON COUNCIL OF DETROIT *v.* SCHMID.

RUOFF *v.* COMMON COUNCIL OF DETROIT.

1. CONSTITUTIONAL LAW—TITLE TO ACT.
    Section 20, art. 4, of the Constitution, requiring the object of every law to be expressed in its title, refers to the title of the act as passed, and not to the title of the bill during any of the antecedent stages of legislation.   GRANT and MOORE, JJ., dissenting.

128    379
s87NW  383
s92ASR 468
131    468

128    379
141    443

128    379
f145   2423

2. SAME—AMENDATORY ACTS.

The title to an amendatory act need be no more specific than that of the act amended, if there is nothing in the later act that might not have been incorporated in the earlier one under its existing title.

3. SAME—TIME FOR INTRODUCTION OF BILLS—SUBSTITUTES.

Section 28, art. 4, of the Constitution, providing that no new bill shall be introduced in the legislature after the expiration of the first 50 days of the session, does not prevent the substitution of one bill for another after such period, provided the subject-matter of the substituted bill is germane to the general purpose indicated by the title of the original bill.

4. SAME—CHARTER AMENDMENTS.

Under this rule, a bill purporting by its title to amend a specified section of a city charter, without stating the subject of the section, may have substituted for it a bill to amend a certain other section of the same charter, the subject-matter of which has no necessary connection with that of the former section. GRANT and MOORE, JJ., dissenting.

5. SAME.

Act No. 437, Local Acts 1901, entitled "An act to amend sections 1, 2, and 13 of chapter 2, and sections 1 and 25 of chapter 4, of an act entitled 'An act to provide a charter for the city of Detroit,'" substituted biennial for annual elections in said city, and postponed the next following election for one year. The act was reported out in the legislature, after the expiration of the first 50 days of the session, as a substitute for a bill theretofore introduced, entitled "A bill to amend section 2 of chapter 4 of an act entitled 'An act to provide a charter for the city of Detroit;'" which latter section related solely to the appointment of certain municipal officers. *Held*, that the act was not void as in violation of either of the constitutional provisions above mentioned. GRANT and MOORE, JJ., dissenting.

6. SAME—LOCAL SELF-GOVERNMENT—LEGISLATIVE APPOINTMENTS TO OFFICE.

Nor was the act void as amounting to a legislative appointment to office of the city officers holding over in consequence of the postponement of the election, since such officers were elected for terms expiring only with the election and qualification of their successors, and would hold over by virtue of such election, and the provisions of the act were not such as would warrant the inference of an intention on the part of the legislature to deprive such offices of their elective character.

*Certiorari* to Wayne; Brooke, Frazer, Donovan, and Hosmer, JJ. Submitted September 24, 1901. Decided October 8, 1901.

*Mandamus* by the common council of the city of Detroit to compel John A. Schmid, city clerk, and De Witt H. Moreland, commissioner of public works, to take the necessary steps for a city election. From an order denying the writ, relator brings *certiorari.* Affirmed.

*Timothy E. Tarsney,* for relator.

*John J. Speed* and *Robert T. Speed* (*Fred A. Baker* and *John W. Beaumont,* of counsel), for respondents.

*Mandamus* by Augustus Ruoff and others to compel the common council of the city of Detroit and William C. Maybury, mayor, to order a special election. From an order granting the writ, respondents bring *certiorari.* Affirmed.

*Robert W. Webb,* for relators.

*Timothy E. Tarsney,* for respondents.

LONG, J. For the purpose of testing the constitutional validity of an act of the legislature of 1901, approved May 21, 1901 (Act No. 437, Local Acts 1901), establishing biennial instead of annual city elections, the common council of the city of Detroit instructed the city clerk to take the necessary steps for the registration of voters for an election to be held on the first Tuesday after the first Monday of November, 1901, and also instructed the commissioner of public works to cause polling booths to be erected for the purpose of such registration and election. The city clerk and commissioner both refused to follow the instructions of the common council, basing their refusal upon the validity of said act of May 21, 1901. *Mandamus* proceedings were thereupon instituted against the city clerk and commissioner in the circuit court for

Wayne county, and an order to show cause was issued to said officers. Upon a hearing before four of the Wayne circuit judges, sitting *in banc*, the *mandamus* was refused; Judge Hosmer dissenting on the ground that the act was in violation of section 28, art. 4, of the Constitution of this State. The proceedings are before this court upon *certiorari* to review the action of the circuit judges.

Previous to the passage of the act of May 21, 1901, annual city elections were held in Detroit in November and April of each year. Section 1, chap. 2, of the act of 1901, provides that no election shall be held in November, 1901, and abolishes annual city elections. It provides for a biennial city election on the first Tuesday after the first Monday in November, 1902, and every second year thereafter, in connection with the general State election. It provides also for a biennial spring election on the first Monday of April, 1903, and every second year thereafter, in connection with the State judicial election. These were the only material changes in this section. Section 2, chap. 2, was amended so as to conform to the change from annual to biennial elections. Section 13, chap. 2, was changed to cure a claimed existing defect in the boards of registration, and has no bearing upon the change from annual to biennial elections. Section 1, chap. 4, was also amended so as to conform to the change to biennial elections. Section 25, chap. 4, was amended so as to define a vacancy in office under the charter.

The constitutionality of the act of 1901 is attacked upon two grounds:

1. That it was not introduced in either branch of the legislature within the first 50 days of the session.

2. That, in effect, it operates as an appointment by the legislature of the local city officers.

It appears that a bill was introduced in the house within the first 50 days of the session, to wit, on February 12, 1901, entitled:

"A bill to amend section 2 of chapter 4 of an act entitled 'An act to provide a charter for the city of Detroit,

and to repeal all acts and parts of acts in conflict there-with,' approved June 7, 1883."

The bill thus introduced was amended after the first 50 days, the substituted bill being entitled:

"A bill to amend sections 1, 2, and 13 of chapter 2, and sections 1 and 25 of chapter 4, of an act entitled 'An act to provide a'charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith,' approved June 7, 1883."

It appears that the bill as finally passed did not amend section 2 of chapter 4 of the charter, but amended sections 1, 2, and 13 of chapter 2, and sections 1 and 25 of chapter 4, of the act entitled "An act to provide a charter for the city of Detroit," etc. It is the contention of relator that inasmuch as section 2, chap. 4, which was proposed to be amended by the bill as introduced, has reference to an entirely different subject than the bill as finally passed as amended after the first 50 days, the act passed is void as contravening section 28, art. 4, of the Constitution, which provides that "no new bill shall be introduced into either house of the legislature after the first 50 days of a session shall have expired;" and it is further contended that the act is also void under the provisions of section 20, art. 4, of the Constitution, which provides that "no law shall embrace more than one object, which shall be expressed in its title." The argument upon this latter question is that, because the title as introduced is an index to the subject-matter of the bill, the substitute, introduced after the first 50 days, is void, as it is broader than the title as introduced, and is not germane to the general purpose as expressed in the title.

This latter objection has, we think, no force whatever. The exact question was passed upon in *Attorney General* v. *Rice*, 64 Mich. 387, 388 (31 N. W. 204). It was there said:

"The attorney general contends that the Constitution (article 4, § 20) was violated in its spirit, because the title of the bill as introduced did not express the object of the

act as passed. We cannot extend the provisions of the Constitution beyond its express terms in this respect. If the object of the act as passed is fully expressed in its title, the form or *status* of such title at its introduction, or during any of the stages of legislation before it becomes a law, is immaterial. To hold otherwise would, in many cases, prevent any alteration or amendment of a bill after its introduction, as, in legislative practice, it frequently becomes necessary to amend the title as introduced in order to conform to changes in the bill. The title to a bill is usually adopted after it has passed the house, and is not an essential part of the bill, although it is of a law,"— citing *Larrison* v. *Railroad Co.*, 77 Ill. 17.

This question again arose in the case of *Hart* v. *McElroy*, 72 Mich. 452 (40 N. W. 752), and the doctrine laid down in the *Rice Case* was reiterated, and it was said:

"In the present case, therefore, the act is not unconstitutional because the title of the bill as introduced differed from the title of the substitute, or the act as passed."

An inspection of the title and the act as passed shows that there is no constitutional objection to the sufficiency of the object as stated in the title. The amendments to the act are germane to the general object stated in the original title.

The fact that the amendments were made to the bill does not render the act void under section 28 of article 4 of the Constitution. It is not a new bill, within the meaning of that section. It is well-known history in this State that most of the acts passed by the legislature are passed after the first 50 days of the session, and many, if not most, of them amended after the first 50 days. That subject has had consideration by this court in many cases. As early as 1878, in the case of *People* v. *Judge of Superior Court of Grand Rapids*, 39 Mich. 195, the question was presented. The act there under consideration purported by its title to revise and amend several sections of an old statute, and to add several new sections. The particular provision in question was contained in a section numbered

7, which corresponded in number with an old section, which was not mentioned in the title. The act was upheld. The title to that act is as follows:

"An act to revise and amend sections 6, 11, 13, 19, and 21 of an act entitled 'An act to provide for a municipal court in the city of Grand Rapids, to be called "The Superior Court of Grand Rapids,"' being Act No. 49 of the Session Laws of 1875, approved March 24, 1875, and to add six new sections to the act, to stand as sections 24, 25, 26, 27, 28, and 29." Act No. 147, Pub. Acts 1877.

It will be noted that section 7 was not referred to in the title. The sections added by amendment, to wit, 24, 25, 26, 27, 28, and 29, refer to the stenographer of the court, —a subject in no way germane to that embodied in section 7. The only notice, therefore, of a purpose to introduce an amendment which would affect the provisions of section 7 as they stood in the original act, was the notice of a title to amend other named sections of the act, and the law could only have been upheld upon the view that the notice of an amendment to a section of an act admits of the introduction of any amendment within the original title of the act.

In *Pack* v. *Barton*, 47 Mich. 520 (11 N. W. 367), the objection to the act was, as here, that it was not introduced until after the expiration of 50 days of the session, although the Constitution provides that "no new bill shall be introduced  *  *  *  after the first 50 days of a session shall have expired." The facts of the case were shown to be that, within the 50 days, a bill was introduced for the organization of the township of Montmorency, and, after the 50 days had expired, the bill was amended to provide for the organization of the county of Montmorency. It was the contention that this was the introduction of a new bill. This court upheld the legislation. The following cases also uphold the general doctrine that, where the amendments are germane to the general object stated in the title to the original bill, such amendments are valid: *Board of Sup'rs of Chippewa Co.* v. *Auditor General*,

128 MICH.—25.

65 Mich. 408 (32 N. W. 651); *Attorney General* v. *Amos,* 60 Mich. 372 (27 N. W. 571); *Attorney General* v. *Rice,* 64 Mich. 385 (31 N. W. 203); *Hart* v. *McElroy,* 72 Mich. 446 (40 N. W. 750); *People* v. *Howard,* 73 Mich. 10 (40 N. W. 789); *Holden* v. *Osceola Co. Sup'rs,* 77 Mich. 202 (43 N. W. 969); *Caldwell* v. *Ward,* 83 Mich. 13 (46 N. W. 1024); *Toll* v. *Jerome,* 101 Mich. 468 (59 N. W. 816); *Davock* v. *Moore,* 105 Mich. 133 (63 N. W. 424, 28 L. R. A. 783); *City of Detroit* v. *Wayne Circuit Judge,* 112 Mich. 317 (70 N. W. 894); *Fort Street Union Depot Co.* v. *Commissioner of Railroads,* 118 Mich. 340 (76 N. W. 631); *Springer* v. *City of Detroit,* 118 Mich. 69 (76 N. W. 122); *Renackowsky* v. *Board of Water Com'rs of Detroit,* 122 Mich. 613 (81 N. W. 581).

In *Holden* v. *Osceola Co. Sup'rs, supra,* it was said:

"Most of the great changes in our city organizations have come in under laws which did no more than to indicate by their titles a purpose to incorporate, or reincorporate, or revise the corporate charter of the municipality dealt with. Anything which is meant to form a permanent element in municipal arrangements is pertinent to the incorporation."

In *People* v. *Howard, supra,* it was said:

"Acts entitled acts to amend a named act are not obnoxious to the Constitution, if the amendment fairly comes within the scope of the title of the original act."

In *Fort Street Union Depot Co.* v. *Commissioner of Railroads, supra,* it was said:

"The important question is, What is requisite to the title of the amendatory act? Must it call attention to the fact that the scope of section 3 [Act No. 198, art. 3, Laws 1873] is to be enlarged, and mention the corporations to be included, either by name or generically, or must every one take notice that section 3 is liable to be amended in any particular, and to any extent, within the terms of the original title? * * * Many authorities support the rule that the title of the amendatory act is sufficient, and will support any legislation that would have been permis-

sible under the original title when the law amended was enacted, if the amendatory act refers by chapter or section to the act amended, giving its title, although the practice has been criticised. Thus, in the case of *People v. Judge of Superior Court of Grand Rapids,* 39 Mich. 197, such an amendment was sustained, notwithstanding the title incorrectly stated the number of the section sought to be amended. In *People* v. *Gadway,* 61 Mich. 290 (28 N. W. 102, 1 Am. St. Rep. 580), Mr. Justice CHAMPLIN says:

"'In applying the constitutional test to this law, it must be regarded as if section 15 [Act No. 178, Pub. Acts 1883] was embraced in the original when passed; and, if it is embraced in the title of the act of 1881, it is valid; otherwise, not.'

"It is fair to say that it is not clear that the exact question before us was discussed in that case, as apparently both court and counsel took it for granted that the case must turn upon the title to the original act.

"The case of *Holden* v. *Osceola Co. Sup'rs,* 77 Mich. 202 (43 N. W. 969), is also in point, Mr. Justice CAMPBELL saying: ' *It is undoubtedly competent to introduce by amendment anything which might have been introduced in the original act.*' The title to the act in that case, as in this, referred to a section, and not to the act. It was as follows: 'An act to amend section 3 of Act No. 331,' etc., 'entitled,' etc. Act No. 342, Local Acts 1889.

"The question was before this court again in *People* v. *Howard,* 73 Mich. 10 (40 N. W. 789). This was a criminal case, and the title was 'An act to amend chapter 154 of the Revised Statutes of 1846, being chapter 180 of the Complied Laws, entitled "Of Offenses against the Lives and Property of Individuals."' Act No. 116, Laws 1867. The object of this amendment was to create a new offense, and a felony at that; yet the law was held valid."

In the case of *Renackowsky* v. *Board of Water Com'rs of Detroit,* 122 Mich. 613 (81 N. W. 581), the case of *City of Detroit* v. *Wayne Circuit Judge* was approved. The *Sackrider Case,* 79 Mich. 59 (44 N. W. 165), and *Plank-Road Case,* 97 Mich. 589 (56 N. W. 943), which seem to be relied upon by counsel for relator, were distinguished from the other cases by Mr. Justice MONTGOMERY in *Toll* v. *Jerome,* 101 Mich. 471 (59 N. W. 816).

It seems, therefore, that the law is fully settled in this
State that whatever might have been incorporated into
the original act under the title of such original act may be
added by way of amendment under the most general title.
The substituted bill and title in the present case indicate
the same general purpose as the original title.   The notice
to be imputed from the original title is of a change in the
city charter of Detroit.   It was certainly not to be a re-
enactment of section 2, chap. 4, but a change, the extent
of which could be disclosed only by an inspection of the
original bill; and presumptively such inspection would
have disclosed the change actually and finally made.   Nor
would the original title itself have indicated the nature of
the change.   A proposed amendment to section 2, chap.
4, would convey no knowledge of the amendment without
an inspection of the body of the bill.   The only informa-
tion conveyed by such title would be that the charter itself
was to be in some manner amended.   The notice, there-
fore, was of a change in the charter.   The titles of both
the original and substituted bills indicate such a change.
Both titles, therefore, disclose the same general purpose.

In *Attorney General* v. *Amos*, 60 Mich. 372, 379 (27
N. W. 571), the original bill amended sections 3 and 4 of
chapter 1 of an act entitled " An act to provide a charter
for the city of Detroit," and the substituted bill was
entitled "A bill to amend sections 3, 4, and 5 of chapter 1
and to add five new sections to Act No. 326 of the Session
Laws of 1883, entitled ' An act to provide a charter for
the city of Detroit.' "   It was said by the court that "the
bill had for its object the amendment of the charter of the
city of Detroit."

A bill to vacate one judicial circuit, and to reorganize
another, was held in *Toll* v. *Jerome*, 101 Mich. 468 (59
N. W. 816), to be of the same general purpose as a bill to
require the judge of the former circuit to hold court in the
latter.

In *Attorney General* v. *Rice, supra*, it was said:

"The journal of the senate positively states that a bill

was introduced to organize the township of Au Train. If such a bill was introduced, it would be presumed that the bill substituted, to organize the township of Ironwood, had in view the same general purpose as the first bill,—to give to the inhabitants of the territory described a distinct municipal government."

And in *Hart* v. *McElroy,* 72 Mich. 446 (40 N. W. 750), it was said:

"We have no right to presume that the body of the substitute was not germane to the body of the [original] bill."

We must therefore hold that the act is not defective, as claimed.

The claim of counsel for relator that the act operates as an appointment of local city officers by the legislature cannot be sustained. Apparently it was not claimed in the court below, and it is not claimed here, that the legislature had no power to change the time of holding elections in the city of Detroit; but the contention is that the effect of the act is to continue in office the present city officers beyond the terms for which they were elected, and this operates as an indirect appointment by the legislature. The Constitution directs, by section 13, art. 15, that "the legislature shall provide for the incorporation and organization of cities and villages." Under this provision the legislature directs what the nature of the organization shall be; what officers shall be elected or appointed; their terms of office; their powers, duties, and compensation; when vacancies shall exist, and how they shall be filled. This power to so prescribe is within the scope of the power to organize the municipality. Then follows a provision in section 14 of the same article of the Constitution that "judicial officers of cities and villages shall be elected, and all other officers shall be elected or appointed, at such time and in such manner as the legislature may direct." It is argued by Judge Speed, counsel for respondents, that:

"It must be conceded that the authority to organize and the authority to prescribe the time and manner of election and appointment of officers of a city is a continuing power, which may be exercised and re-exercised at the pleasure of the legislature; that, having provided for annual city elections, the legislature may abolish the annual city election and substitute biennial elections, and may fix the time and prescribe the manner of conducting such biennial election; and that such change must necessarily involve or require some legislation, or bring into operation some existing provisions, as to the officers whose terms may be affected by the change.

"It is, however, claimed [by relator] that there is in this language granting an express power to fix the time of holding such elections an implication which forbids the fixing of *such* a time for holding the election that the officers then in office would hold over, for the reason that such holding over violates a further implication that officers of cities or villages shall be elected or appointed by local authority, and a holding over by authority of the legislature is in effect an appointment by the legislature; that is to say, the express power to prescribe the time and manner of election is limited or controlled by the implication that the legislature shall not fix a time which would have the effect to leave any one in office for any time beyond that for which he was elected.   *   *   *

"A concession to the claim of relator would require the legislature, if it fixed a time, as in the present instance, for holding the election after the expiration of the terms of existing officers, to provide for the holding of an *ad interim* election of officers for the time intervening between the expiration of present terms and the new election; and the Constitution, notwithstanding its very plain language, must be read as if it contained this requirement."

There is great force in these suggestions, and they lead to an inquiry as to the term for which the present city officers were elected.   Section 5, chap. 4, of the charter of the city of Detroit, provides:

"All officers, whether elected or appointed, shall hold their offices respectively until their successors shall be duly elected or appointed and qualified, and shall enter upon the discharge of their duties."

The act under consideration nowhere refers to the exist-

ing officers, and makes no express extension of their terms of office.  If such officers are continued in office, it is not by virtue of this act, but by virtue of the above provision of the charter of Detroit.  This was the unanimous decision of the court below.  It was said by that court:

"We do not think that the question of local self-government is involved in these cases at all.  The present city officers were elected by the people, under the law that then existed, and with full knowledge of the law, to hold their offices for the full term for which they were elected.  What was that term, under the law?  It was just this:  That they should hold their offices for the full time specified in the law for each officer, respectively, and until their successors were elected and qualified.  Under the law they hold their offices, not by legislative appointment, but by the votes of the people constitutionally recorded, and from no other authority.

"That the legislature has the right to change the time of holding elections was not questioned on the argument, nor can it be successfully questioned.  By the change a contingency has arisen whereby either new officers have to be elected, or the offices remain vacant, or the present officers hold over during the interim.  It is not necessary to discuss the first two of these propositions, for the answer to the third eliminates them from the discussion.  The present officers do hold over, because the law says so, and the people elected them knowing that in such a contingency they would hold over."  *Common Council of Detroit* v. *Schmid,* 8 Det. Leg. N. 583.

We fully agree with the court below in this statement, and with the contention made by Judge Speed in his brief.  This seems to be the established and unquestioned rule wherever the question has arisen.  In *State* v. *Menaugh,* 151 Ind. 260, 271–273 (51 N. E. 117, 357, 43 L. R. A. 408, 418), a similar question is discussed.  It appears that the Indiana constitution expressly prohibits the legislature from creating any office for a longer term than four years, but under the constitution an officer holds until his successor is elected and qualified.  The constitution also provides that the officers in question "shall be elected or appointed in such a manner as may be prescribed by law."

Article 6, § 3. The legislature changed the time of the election, the effect of which was to continue the incumbent officers in office for a period of two years beyond the constitutional limit, and this legislation was attacked on that ground. The court said:

"An examination of the act will readily disclose that it does not profess to create the office of township trustee, nor to extend the term thereof beyond the constitutional limit. It proceeds upon the theory that the office has been previously created, and it merely declares as the legislative will that the time of holding an election for township trustees, etc., shall be changed from the general election on the first Tuesday after the first Monday in November, 1898, to the general election on the first Tuesday after the first Monday in November, 1900, and on such day 'of every fourth year thereafter.' * * * The statute in question makes no reference to present incumbents. It neither pretends nor attempts to abridge or enlarge their tenure. * * * Consequently, if incumbent trustees are permitted to hold beyond four years, it cannot, in legal contemplation, be attributed to the provisions of the act in controversy, but will be due to the force and effect of the provision of the constitution last mentioned."

Again the court said:

"In consideration of this constitutional provision, the electors of this State, when, by their ballots, they designate a person to fill a public office the tenure of which is prescribed either by the constitution or some statute, must be presumed to understand and know that the contingent holding of the officer until his successor is elected and qualified is as much a part of the term for which he is elected as is that which is expressly prescribed and fixed."

In *State* v. *Ranson*, 73 Mo. 78, the hold-over provision was apparently a statutory, and not a constitutional, one. The Missouri constitution provided that the term of an officer should not be "extended for a longer period than that for which such officer was elected or appointed." The legislature changed the time of holding the election so that no election could be held until two years after the end of the term of the officer in question. It was held

that the time intervening between the end of the term of
an officer and the election of his successor "is as much a
part of his term of office as the four years that preceded
it."

In *Jordan* v. *Bailey*, 37 Minn. 174 (33 N. W. 778), it
was held that the legislature may make reasonable
changes, by amendments to existing laws, in respect to
the time of holding elections for the offices then under con-
sideration (to wit, municipal judges), and in such case in-
cumbents previously elected for an existing term, and
until their successors are elected and qualified, may hold
over during the interval; that such act would not be un-
constitutional, unless the change left the incumbent in
office for such unreasonable time as to raise the presump-
tion of a design to deprive the office of its elective char-
acter.    The following cases lay down the same doctrine:
*State* v. *McCracken*, 51 Ohio St. 123 (36 N. E. 941);
*State* v. *McGovney*, 92 Mo. 428 (3 S. W. 867); *Christy*
v. *Sacramento Co. Sup'rs*, 39 Cal. 3.

It is said by counsel for relator, however, that, if the
legislature can place the election one year beyond the
term for which such officers were elected, it can extend it
ten or any number of years.    That question was referred
to in *Jordan* v. *Bailey*, *supra*, by the Minnesota court,
and the court said:

"The constitution is satisfied if provision is made
by law for the election of such officers at stated periods,
unless these periods are fixed at times so far remote from
each other as to raise the presumption of a design sub-
stantially to deprive these offices of their elective charac-
ter."

In that case the election was put off for more than one
year, and it was said by the court:

"The legislature are not at liberty to abuse their author-
ity in such cases, and we cannot presume that it has done
so in this case.    *    *    *    We are not authorized in hold-
ing this to be an unreasonable change, and we are not
warranted in imputing to the legislature any unworthy
purpose in making it; nor is the incidental result that the

respondents hold over in the interval, by virtue of the terms of the previously existing statute, in itself sufficient to show an intention to deprive the office of its elective character."

In the present case the period fixed for holding the election continues the incumbents in office under the terms of the charter. one year. This is not unreasonable, especially as it saves the city of Detroit the expense of an election in November, 1901, and the spring of 1902, and places the election at times when the general State elections are to be held.

Counsel for relator, however, cites several cases which he claims hold the doctrine for which he contends. We think the cases cited by him may be readily distinguished. In the case of *People* v. *Bull*, 46 N. Y. 57 (7 Am. Rep. 302), the statute under consideration (Laws N. Y. 1866, chap. 217) was entitled "An act to extend the term of the office of the justice and clerk of the district court," etc.; and Mr. Justice Folger, in deciding the case, says:

"He [respondent] placed his title to it after the expiration of the six-year term explicitly upon the legislative continuance of him in it by the act of 1866. Such is his answer in the case, and no other right or title is set up. And upon this he must stand."

In *People* v. *McKinney*, 52 N. Y. 374, the claim was made that respondent was entitled to the continuance of his office of collecter of taxes by virtue of "An act for the extension of the term of office of collector of taxes in the several towns of Kings county." Chapter 364, Laws N. Y. 1870.

In *State* v. *Krez*, 88 Wis. 135 (59 N. W. 593), it also appears that the legislature, by express provision, sought to extend the term of office of city attorney, and the court held that this could not be done. None of these cases is in conflict with the rule laid down by the circuit judges in the present case.

We think the act valid, and that the *mandamus* was properly denied. The order will be affirmed.

In the *Ruoff Case* a vacancy exists by the resignation of the alderman in the Fifteenth ward of Detroit. It follows from what we have said that that vacancy cannot be filled by general election until November, 1902. The court below ordered a special election to be held to fill such vacancy on the 8th of the present month. That order must be affirmed. That time having now elapsed, the council will undoubtedly call the special election at some future date.

MONTGOMERY, C. J., and HOOKER, J., concurred with LONG, J.

GRANT, J. ( *dissenting* ). The object of these suits is to test the constitutionality of Act No. 437, Local Acts 1901, entitled:

" An act to amend sections one, two, and thirteen of chapter two, and sections one and twenty-five of chapter four, of an act entitled ' An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith,' approved June seventh, eighteen hundred eighty-three."

The legislative journals show the following: February 12, 1901, Representative Ames, by request, introduced house bill No. 347, entitled:

" A bill to amend section 2 of chapter 4 of an act entitled ' An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith,' approved June 7, 1883."

The bill was read a first and second time by its title, and pending its reference to a committee, on motion of Mr. Ames, the bill was laid on the table. It rested there till March 18th, when Mr. Ames moved to take from the table house bill No. 347, entitled "A bill to amend section 2 of chapter 4 of an act entitled 'An act,'" etc., which motion prevailed, and on motion of Mr. Ames the bill was referred to the committee on city corporations. March 22d, the committee on city corporations, to whom was referred house bill No. 347, entitled "A bill to amend sec-

tion 2 of chapter 4 of an act entitled," etc., respectfully
reported that they had had the same under consideration,
and, by a majority vote of the committee, reported the
same back to the house with an accompanying substitute
therefor, entitled "A bill to amend sections 1, 2, and 3 of
chapter 2, section 1 of chapter 3, and section 1 of chapter
4, of an act entitled 'An act to provide a charter for the
city of Detroit, and to repeal all acts and parts of acts in
conflict therewith,' approved June 7, 1883." The report
was accepted, and, the question being on concurring in
the substitute reported for the bill by the committee, the
house concurred. Mr. Ames moved that the rules be sus-
pended and the bill be put on its immediate passage, which
motion prevailed, two-thirds of the members present vot-
ing therefor by yeas and nays.

March 25th the following appears in the senate journal:

"HOUSE OF REPRESENTATIVES,
"LANSING, March 22, 1901.
"To the President of the Senate—
"*Sir:* I am instructed by the house to transmit the
following bill: House bill No. 347, entitled 'A bill to
amend sections 1, 2, and 3 of chapter 2, section 1 of chap-
ter 3, and section 1 of chapter 4, of an act entitled "An
act to provide a charter for the city of Detroit. * * *"'
"Very respectfully,
"LEWIS M. MILLER,
"Clerk of the House of Representatives."

The bill was read a first and second time by its title,
and referred to the committee on cities and villages.
May 8th the committee on cities and villages, to whom
was referred house bill No. 347, entitled "A bill to amend
sections 1, 2, and 3 of chapter 2, section 1 of chapter 3, and
section 1 of chapter 4, of an act entitled 'An act to pro-
vide a charter for the city of Detroit,'" etc., respectfully
reported that "they have had the same under considera-
tion, and have directed me to report the bill back to
the senate with the accompanying substitute therefor,
entitled 'A bill to amend sections 1, 2, and 13 of chapter
2, and sections 1 and 25 of chapter 4, of an act entitled

"An act to provide a charter for the city of Detroit,""" etc., "recommending that the substitute be concurred in, and that the bill, as substituted, do pass." Mr. Murfin moved that the senate concur in the adoption of the substitute reported by the committee. The motion prevailed. Mr. Holmes moved that the rules be suspended, and that the bill be placed upon its immediate passage. The motion prevailed, two-thirds of all the senators present voting therefor. The bill was then read a third time and passed, a majority of all the senators-elect voting therefor by yeas and nays: Yeas, 28; nays, 1. The title was agreed to.

On the same day, namely, May 8th, there appears in the house journal the following:

"SENATE CHAMBER,
"LANSING, May 8, 1901.

"To the Speaker of the House of Representatives—

"*Sir:* I am instructed by the senate to return to the house the following bill: House bill No. 347, entitled 'A bill to amend sections 1, 2, and 3 of chapter 2, section 1 of chapter 3, and section 1 of chapter 4, of an act entitled "An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith," approved June 7, 1883,'—and to inform the house that the senate has adopted the accompanying substitute therefor, with the following title: 'A bill to amend sections 1, 2, and 13 of chapter 2, and sections 1 and 25 of chapter 4, of an act entitled "An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith," approved June 7, 1883,'—and that in the passage of the bill, as thus substituted, the senate has concurred.

"Very respectfully,
"E. V. CHILSON,
"Secretary of the Senate."

The question being on concurring in the substitute reported by the senate for the bill, the previous question was ordered. The house then concurred in the substitute bill reported from the senate, a majority of all the members-elect voting therefor by yeas and nays: Yeas, 60; nays, 11. The question being on concurring in the title

of the substitute bill, the house concurred.    The bill was then referred for enrollment and presentation to the governor, under the rules.

Section 2 of the act states that "the object and purpose of this act is to amend the charter of the city of Detroit so as to provide for biennial city elections, instead of annual city elections." Section 3, the closing section, repeals "all acts or parts of acts inconsistent with this act."

The constitutionality of this act is assailed as being in violation of article 4, § 28, of the Constitution, reading:

"No new bill shall be introduced into either house of the legislature after the first fifty days of a session shall have expired."

If no such bill, or no bill with a title which might be amended as was the title in this case, had been introduced before the expiration of the 50-day limit, the act would concededly be void.    The conclusion to be reached, therefore, depends upon another provision of the Constitution (section 20, art. 4), reading that "no law shall embrace more than one object, which shall be expressed in its title."

A bill was introduced to amend section 2 of chapter 4. If that title gave notice to the inhabitants of the city and to the legislators that under it any section or chapter of the charter might be amended or repealed, or new sections added thereto, then the contention of the respondents must prevail.    If, on the other hand, under this constitutional provision the inhabitants of said city and the legislators had the right to examine and read the section proposed to be amended in order to inform themselves as to the subject-matter of the bill and its object, and rest upon the conclusion that their entire charter was not open for amendment or revision, then the relator must prevail.

Chapter 4 relates exclusively to officers of the city, their election, appointment, qualifications, etc.    Section 2 relates exclusively to appointments by the common council on the nomination of the mayor and of the controller. The charter, as revised in 1883, contains 37 chapters and

692 sections. While there have been many amendments, I find no revision since then, and shall assume that the division is the same now as then. These chapters are entitled as follows:

"Incorporation: City and Ward Boundaries." "Registration and Election." "City Elections." "Officers: Who Elected or Appointed; Qualifications, Bonds, Term; Removal, Vacancies, etc." "Officers: Their Rights, Powers, and Duties." "Reports of Officers and Boards." "Common Council: How Constituted; Powers and Duties." "Estimates: Duties of Controller and Powers of Common Council Relative Thereto." "Issue of Bonds for Public Sewers." "Assessment of Taxes and Their Collection." "Taxation and Finance." "Recorder's Court." "Opening, Widening, and Straightening of Streets and Alleys." "Central Public Market." "Board of Public Works." "Board of Building Inspectors." "Board of Fire Commissioners." "Relief of Disabled Firemen." "Old Fire Department." "Board of Health." "Board of Poor Commissioners." "Poor Commissioners of Detroit to Act as County Superintendents of Poor." "Belle Isle Park." "Board of Park Commissioners." "Establishment of a Boulevard." "Public Schools." "Board of Water Commissioners." "Board of Metropolitan Police." "House of Correction." "Police Court." "Disorderly Persons." "Jurors of Courts of Record." "Superior Court." "Justices' Courts." "Registration of Births and Deaths." "Purchasing Franchises of Plank-Road Companies." "Manufacture and Sale of Illuminating Gas."

Chapter 2 relates solely to registration. Its provisions relate exclusively to the registration of voters, and the requirements for registration in order to vote. Chapter 3 relates to the city elections, and provides for the means for holding them. Section 1 of chapter 4 provides that certain officers, including the mayor, etc.; shall be elected. Section 25 of chapter 4 provides for filling vacancies.

It will be observed that under the innocent title to amend one section of one chapter, relating solely to one subject, viz., appointments to certain offices, the legislature did not amend the section referred to, or include in

this act any provision in regard to it. On the contrary, it passed a bill with a title referring to other sections, other chapters, and other subjects, and having no bearing whatever upon the subject-matter as expressed in the title of the original bill. If this is constitutional legislation, then these two provisions of the Constitution now serve no useful purpose, except in legislation covering entirely new subjects, and in regard to which there is no act to be found in the statutes. The greater part of legislation is now by amendments to existing laws, for there are but few subjects of general legislation which are not covered by existing laws. One hundred and six of the Public Acts of 1901 are acts to amend the then existing statutes.

It was conceded by the learned counsel for the respondents upon the argument that if, in addition to the title to amend section 2 of chapter 4, the words "relating to appointments to office" had been added, this legislation would have been void, because they say the title would then be restricted. Would not the same result follow logically if the title to the bill had read "A bill to amend section 2 of chapter 4, reading as follows,"—inserting the entire section ? It certainly could make no difference whether the substance of the section amended were stated, or the entire section given in full. Now, when the title expressly refers to a given section, has not the interested citizen the same notice of the purpose of that title, when he is referred to and reads the section, as when its substance or full text is included in the title ? Is it not paradoxical to say that he may not draw the same inference from a section of the law which he is referred to, by turning to and reading it, as when it is reprinted in the title to the act, or its substance stated therein ? Is the intelligent citizen to be held to draw one conclusion when he is referred to the law to read, and another when it is quoted or its substance stated to him ? Is he to be told that under a title to amend one section out of 692, which section refers to "Registration of Births and Deaths," and one chapter out of 37, which chapter refers solely to the same

subject, the other 36 chapters and 691 sections are all subject to amendment or appeal ?   Would not the layman of ordinary intelligence at once pronounce unsound and unsafe such a construction of his organic law ?

According to the contention of the respondents, under a title to amend by number the most insignificant provision of a city charter, and one about which the average citizen may care nothing, every section of the charter is open to amendment.   His right to choose his own officers may, as in this case, be taken away from him for one, two, or more years; the bonded limit of the city may be raised; the tax limit may be raised; new boards organized; and in fact all his substantial rights as a citizen of the municipality may be seriously affected.   To make the matter, if possible, more illogical, a designing legislator might introduce a bill to amend section 2 of chapter 25, which refers to the establishment of a boulevard, and introduce in the body of the act provisions abolishing the recorder's court, amending the law in regard to sewers, etc.   The same result could be accomplished by introducing an amendment to chapter 37, relating to the manufacture and sale of illuminating gas.   Is this what is meant by the constitutional requirement that the "object of a bill must be expressed in its title?"   Is a title to amend one section of a statute notice to the public that the entire statute is open for revision, amendment, repeal, or additions?   If such is the logic, as is claimed, of the former decisions of this court, I must plead guilty to an unconscious assent to a doctrine which I never dreamed of approving.   In no case did it occur to me that I was passing upon a question like the present one.

Let us carry this rule to a logical conclusion, and see to what it would lead.   Chapter 320 of the Compiled Laws is entitled " Of Offenses against Property."   It contains 123 sections.   It creates, defines, and provides punishment for many crimes.   A general title, " An act to amend chapter 320 of the Compiled Laws," would authorize the creation of a new offense against property, and

the providing of a punishment therefor.   This would be so whether the title to the bill was simply "To amend chapter 320," or "To amend chapter 320, entitled 'Of Offenses against Property.'"   *People* v. *Howard*, 73 Mich. 10 (40 N. W. 789).   The title of the act in that case was "An act to amend chapter 154 of the Revised Statutes of 1846, being chapter 180 of the Compiled Laws, entitled 'Of Offenses against the Lives and Property of Individuals.'"   The title was held sufficient to cover any offense that came within the title to the chapter.   The reasoning of the court is found on page 14.   And, while the court virtually condemned the practice which the legislature then indulged in, it sustained the law, upon the theory that the public attention is challenged by such a title to the entire class of offenses which come within the title to the chapter. In other words, it was held to be a general title, not a restricted one.   It was under such a general title that the court said:

"Acts entitled acts to amend a named act are not obnoxious to the Constitution, if the amendment fairly comes within the scope of the title of the original act."

There was nothing in the facts of that case to challenge attention to the question now before us, and there is not a sentence in the opinion bearing in the remotest degree upon it.

Should a bill be introduced to amend a certain section referring to a particular crime, would it be contended that any crime provided in the chapter could be amended, or a new crime created?   Section 11538 of that chapter defines the crime of "willful and malicious burning in the night-time of any meeting-house," etc., and prescribes the punishment therefor.   Under a bill entitled "A bill to amend section 11538, chap. 320, of the Compiled Laws," would it be competent to repeal or amend any other section in that chapter relating to other crimes? or to add any number of new crimes to the statute?   What is the presumption when an interested citizen, seeing the title to this act,

resorts to the statute to see what the subject of the amendment is? He finds that it refers only to one crime. Is he served with notice that the legislature may amend or repeal the sections of the chapter referring to burglary, larceny, receiving stolen goods, embezzlement, forgery, and other like crimes provided by separate provisions of the statute? The same illustration could be made in regard to chapter 319, entitled "Of Offenses against the Lives and Persons of Individuals," which covers 66 sections, and provides for about 50 different crimes.

Again, chapter 101 of the Compiled Laws is entitled "The Construction of Roads and Bridges." It contains 194 sections, covering all phases of laying out, constructing, maintaining, and using highways. Section 4226 provides for a rebate of highway tax to persons using certain wagons. Under a bill entitled "A bill to amend section 4226 of chapter 101 of the Compiled Laws," would it be competent to amend or repeal any other section of the statute, or to add new sections thereto, covering matters not mentioned in any existing section of the law?

Chapter 98 is entitled "Assessment, Levy, and Collection of Taxes." It contains 139 sections, covering every phase of the assessment, levy, and collection of taxes, and the sale of lands delinquent for taxes. Section 3886 provides for the designation by the auditor general of the newspapers in which the tax notices are to be published. If a bill were introduced entitled "A bill to amend section 3886 of chapter 98," would it be notice to the taxpayers of Michigan that, under such an innocent title, their whole tax system might be the subject of revision or amendment, or both? Has not the taxpayer the right to presume that the body of the act is germane to the subject-matter of the section referred to?

Many other similar illustrations will suggest themselves to the investigator. I have given enough to illustrate the result if this act be sustained. It is, however, strenuously urged that the decisions of this court conclusively support the respondents' position. Owing to the importance of

the case, I may therefore be pardoned for referring fully to the authorities relied upon. Counsel cite: *People* v. *Judge of Superior Court of Grand Rapids*, 39 Mich. 195; *Pack* v. *Barton*, 47 Mich. 520 (11 N. W. 367); *Attorney General* v. *Amos*, 60 Mich. 372 (27 N. W. 571); *Attorney General* v. *Rice*, 64 Mich. 385 (31 N. W. 203); *Board of Sup'rs of Chippewa Co.* v. *Auditor General*, 65 Mich. 408 (32 N. W. 651); *Hart* v. *McElroy*, 72 Mich. 446 (40 N. W. 750); *Holden* v. *Osceola Co. Sup'rs*, 77 Mich. 202 (43 N. W. 969); *Caldwell* v. *Ward*, 83 Mich. 13 (46 N. W. 1024); *Toll* v. *Jerome*, 101 Mich. 468 (59 N. W. 816); *Davock* v. *Moore*, 105 Mich. 133 (63 N. W. 424, 28 L. R. A. 783); *City of Detroit* v. *Wayne Circuit Judge*, 112 Mich. 317 (70 N. W. 894); *Fort Street Union Depot Co.* v. *Commissioner of Railroads*, 118 Mich. 340 (76 N. W. 631); *Springer* v. *City of Detroit*, 118 Mich. 69 (76 N. W. 122); *Renackowsky* v. *Board of Water Com'rs of Detroit*, 122 Mich. 613 (81 N. W. 581). But, before reviewing the above cases, I will refer to the early case of *People* v. *Mahaney*, 13 Mich. 481, written by Justice Cooley, and concurred in by the entire court. That decision brings to us the reason for these constitutional provisions. It holds that the design of section 20 of article 4 was to prevent (1) the joining in the same bill subjects diverse in their natures, and having no necessary connection; (2) the insertion of clauses in a bill of which the title gives no intimation; and (3) to notify legislators and citizens interested of the design of the bill. Without quoting, I refer to page 494 of the opinion.

In *People* v. *Judge of Superior Court of Grand Rapids* the court condemns strongly "the practice of amending by reference to sections, instead of by reference to subjects or to the entire statute." The title to the bill in that case appears to have been, judging from the opinion, the revision and amendment of several sections of the old statute, and the addition of several new sections. The particular provision complained of appears to

have been contained in a section numbered 7, correspond-
ing with a number in an old section not mentioned in the
title. That case should not, and, in my judgment, can-
not fairly, be construed to go any further than to hold
that, where the title to the bill is to add new sections, it is
a general, not a restrictive, title, under which anything
which might have been introduced into the original act
may be introduced under the amendatory act. It does
not hold that a title to amend one section, dealing exclu-
sively with one particular subject, opens the door to addi-
tions or amendments to all the other sections and all the
other subjects contained in the original act.

In *Pack* v. *Barton* a bill introduced to organize certain
territory into the township of Montmorency was amended
so as to convert it into a bill to organize the same territory
into the county of Montmorency. The act was sustained
upon the theory that the purposes of the two were the
same, namely, to organize the same territory into a local
government; and the court remarked that it was import-
ant that the territory organized into the county of Mont-
morency had existed as an unorganized county by the
same name before. There is nothing in that case to rule
this one, or to suggest that this question was under discus-
sion.

In *Attorney General* v. *Amos* the act was entitled:

"An act to amend sections 3, 4, and 5 of chapter 1 of
an act entitled 'An act to provide a charter for the city of
Detroit, and to repeal all acts and parts of acts in conflict
therewith,' being Act No. 326 of the Session Laws of
1883, * * * and to add three new sections to said
chapter, to be known as sections 6, 7, and 8."

The act provided for an enlargement of the territorial
limits of the city. The original section 3 defined the
boundaries of the city of Detroit, and embraced no other
object, and was the section to which the amendment
enlarging the boundaries of the city was made. The
court said:

"The title, therefore, of an act which is stated to be an
amendment of such section necessarily imports that the

boundaries of the municipality are to be changed by the amendment, and hence the object, that is, the alteration of the boundaries, is sufficiently expressed in the title, which states that the act is to amend the section prescribing the boundaries of the city. *The attention of the citizen is, by this title, directly called to the object sought to be attained by the enactment, and he is thereby apprised that the legislature intends either to enlarge or diminish the territorial boundaries of the city.*"

And further said:

"Its title [the title to the bill] was fully as broad as that finally agreed upon as the title of the act."

What is there in that case to support the present contention? Is the attention of the citizen of Detroit by the title in this case directly called to the object sought to be attained by the enactment?

*Attorney General* v. *Rice* is cited in support of two propositions, viz.: (1) That the presumption is favorable to the legality of the legislative proceedings; and (2) that the proceedings in the legislature as appear by the journal cannot be changed by parol. In that case a bill was introduced to organize the township of Au Train. It was changed after the 50-day limit to " A bill to organize the township of Ironwood, in the county of Ontonagon." It was sought to be shown by parol that the proposed township was located in Alger county. The court held that the presumption was (1) that the bill had a body; and (2) that it covered the same territory as the substituted bill. The case further held not only that the contrary of these facts could not be shown by parol testimony, but that the parties could not stipulate that such were not the facts, and thus contradict the legislative record. But the following language in that opinion is quoted to support the present contention:

"If the object of the act as passed is fully expressed in its title, the form or *status* of such title at its introduction, or during any of the stages of legislation before it becomes a law, is immaterial."

Did the learned justice who wrote the opinion intend to hold that the title to a bill was of no consequence under this constitutional provision, and that the title need not express the object of the bill? Did he intend to hold that if the original title had been "A bill to organize the township of Au Train, in Alger county," it could have been changed into "A bill to organize the township of Ironwood, in the county of Ontonagon?"[1] If so, what purpose does section 20 of article 4 subserve? It is evident from reading the entire opinion that the language means that, as applied to that case, so long as the same territory was in the body of the bill as in the body of the act, the name of the township was immaterial. The court say:

"The journal of the senate positively states that a bill was introduced to organize the township of Au Train. If such a bill was introduced, it would be presumed that the bill substituted, to organize the township of Ironwood, had in view the same general purpose as the first bill,—to give to the inhabitants of the territory described a distinct municipal government."

It is impossible to believe that the court intended to hold that a bill to organize a township in Keweenaw county could be changed into a bill to organize a township in the county of Wayne. If such facts had been shown by the journals of the legislature, the act would certainly have been held void. I submit that this exact question was not passed upon in that case.

In construing the above-quoted language, the following general rules must be kept in mind: In considering opinions and determining what has been decided, the entire opinion must be considered, and not alone single sentences. Courts apply the same rule in reviewing instructions to juries. It is often held that a single sentence, standing by itself, would be error, but, when the entire instruction is considered, no error is found. Also that the language of the opinion must be considered to have been

---

[1] For a construction of this language by the same justice, see *Sackrider* v. *Saginaw Co. Sup'rs*, 79 Mich. 68 (44 N. W. 167).

used in relation to the facts found, and must be construed accordingly. Statements not essential to the determination of a case are usually *dicta*, and, to be given any controlling force, it must appear that the entire court intended to decide a point or enunciate a rule not involved in the case.

In *Board of Sup'rs of Chippewa Co.* v. *Auditor General* the title to the bill mentioned the very section (2) which was amended, and was included in the title to the act. The titles in the bill and in the act were identical. The court said: "The title is as specific as titles can conveniently be made." The question now under discussion was not there even mooted. Is the title in the case before us "as specific as it could conveniently be made?"

The act in *Hart* v. *McElroy* was sustained upon exactly the same theory as was *Pack* v. *Barton*, viz., that the territory mentioned in the two titles was the same, and the main object was the same. No question as to the title of a bill to amend a statute was involved.

In *Caldwell* v. *Ward* the legislation was sustained upon the express theory that the title to the original and substituted bill related to the same subject-matter, viz., the collection of taxes, and had the same object in view, viz., the enforcement of such collection.

In *Toll* v. *Jerome* the general purposes of the two bills were the same, viz., the holding of courts in two judicial districts.

In *Davock* v. *Moore* section 27 was amended. The original record and briefs in this case I was unable to find. Just how the amendment passed, and what it was, the case fails to show. Nor does it show what the original title was. For all that appears, it may have been the same as was that of the title to the act.

In *Fort Street Union Depot Co.* v. *Commissioner of Railroads* the amendment was made to the section set forth in the title. The act there in question was sustained upon the ground that union depot companies might have been included as the proper subject of taxation in the

original section, and therefore it was competent to introduce them into an amendment to a section whose general object was taxation.

In *Holden* v. *Osceola Co. Sup'rs* there was no amendment of the original title. The object was expressed in the title. The title to the bill and the title to the act were the same, viz.: "To amend section 3," etc. There was no amendment of any other section or provision of the act than the one mentioned in the title to the bill. The section as amended will be found on page 207, 77 Mich. The amendment imposed in the same section an additional power upon the president of the village, which might have been incorporated in the original section. The title was a general one, to amend a given section. The section related to the powers and duties of the president of the village. There was no attempt to amend any other section or provision of the original act. Two contentions were made: (1) That the original act was obsolete; and (2) that the title of the bill should have contained notice of the additional power to be conferred. The subject of the section to be amended was the powers and duties of the president. It was competent, under this general title, under all the prior decisions of this court, to add to or take from the powers and duties conferred upon the president by the original section. Clearly, that case presents no such question as does this one. In that case Mr. Justice MORSE, who wrote the opinions in *Hart* v. *McElroy* and *Attorney General* v. *Rice*, filed a vigorous dissenting opinion.

*City of Detroit* v. *Wayne Circuit Judge, Springer* v. *City of Detroit*, and *Renackowsky* v. *Board of Water Com'rs of Detroit* involve the same statute, viz., Act No. 463, Local Acts 1895. There are no printed record and briefs in *City of Detroit* v. *Wayne Circuit Judge*, except one on behalf of the city, which makes no reference whatever to this alleged defect in the law. I find a written memorandum of points on behalf of the respondent, but neither counsel there raises the point now

before us. The sole point, as I find from the return of the circuit judge and from the memorandum, was that it was necessary that the title to the act should express the purpose of the amendment. The opinion is entirely consistent with the theory upon which the case was presented. In *Springer* v. *City of Detroit* the point was raised by counsel, and it was there shown that the original act was "A bill to amend section 61 of chapter 7, and section 44 of chapter 11, and to add a new section to chapter 13, of an act entitled 'An act,' " etc. A new section was added to chapter 11. The point, for some reason, was ignored, but why I do not remember,—possibly because the act had been sustained in *City of Detroit* v. *Wayne Circuit Judge, supra.* In *Renackowsky* v. *Board of Water Com'rs of Detroit* the point was again raised, and disposed of in two sentences, one of which states that the question of the constitutionality of the act was discussed in the briefs of counsel in *Springer* v. *City of Detroit,* and that the act was then treated as valid; the other, the simple statement that "we are of the opinion that the act is valid, after a re-examination of the reasons urged against its validity." It appears that the question presented in the third case was not passed upon in the first two cases. If, however, we give the *Renackowsky Case* the broadest possible construction in favor of the respondents, it can be carried no further than to hold that, under a bill to amend a section of one chapter of a statute, relating to a given subject, an amendment may be made germane to it by adding a new section to the same chapter. That is far from holding that under a title to amend one section of a chapter of the charter of a municipality, or one section of a chapter containing a general law, legislation which is in no manner connected with or germane to the section proposed to be amended, and which in fact is not amended, will be upheld. None of the cases cited are in their facts the parallel of this. This examination of the cases demonstrates to almost a mathematical certainty that this question has never been passed upon by this court, and has never before been presented for adjudication.

I now call attention to a few authorities in which legislation has been held unconstitutional as in violation of section 28 of article 4. In *Sackrider* v. *Saginaw Co. Sup'rs*, 79 Mich. 59 (44 N. W. 165), both the original and substituted titles related to highways. The original bill provided for discontinuing a certain portion of a highway, and the substituted title was a bill to provide for the construction and maintenance of highways in a certain county of the State. It was sought there to extend the doctrine of *Attorney General* v. *Rice* and *Hart* v. *McElroy* to include the case then before the court, but the court refused. The court then said that, in the case of *Hart* v. *McElroy*, it went as far to sustain this kind of legislation as it was prepared to go, and added, "There must be a limit somewhere,"—meaning a limit to this kind of legislation. Counsel there sought to apply the doctrine of presumption as to the body of the act being germane to the body of the bill as introduced, and the court said :

"To hold, from the journals of the legislature, that the body of the act as passed must be presumed to be germane to the body of the bill as introduced in this case, would be to entertain in this court a presumption which intelligent men out of court would laugh at, and be justified in doing so."

Would not the ordinary layman also be justified in laughing at a proposition that the body of a bill, introduced under a title to amend section 2 of chapter 4, which related solely to appointments to municipal offices, presumptively contained provisions in regard to taxation, schools, courts, elections, parks and boulevards, electric-lighting plants, gas companies, etc.? However this may be, I cannot yield my assent to such legislation in the presence of these plain provisions of the Constitution. Possibly the court has already gone too far in its desire to sustain the acts of a co-ordinate branch of the government, in holding some, which have heretofore been before the court, to be valid. If any of the profession now construe these decisions into a wide-open door for the admission of

legislation such as that now contended for, it is time to call a halt, to close the door, and give the people the benefit of their organic law.

In *Attorney General* v. *Plank-Road Co.*, 97 Mich. 589 (56 N. W. 943), a bill was introduced entitled:

"A bill to authorize the cities and townships of the State to acquire by purchase or condemnation all the rights of toll or plank road companies in the streets or highways of such cities or townships, and to authorize such toll or plank road companies to sell such portions of their roads within such cities or townships in which the same may be located."

Whatever may have been contained in the body of the bill to this act, the title was subsequently changed to read:

"A bill to repeal an act entitled 'An act to incorporate the Detroit & Saline Plank-Road Company,' * * * and to provide for winding up the affairs of said company."

Both titles related to plank roads, but the act was held unconstitutional.

So an act authorizing any plank-road company to sell the whole or any portion of its road and franchises to any other corporation or person was held not germane to the general object, as expressed in the title, to enable cities and towns to acquire, either by purchase or condemnation, that portion of a toll or plank road lying within their corporate limits. The rule is there well stated:

"If the title expresses a general purpose, all matters fairly and reasonably connected with that purpose, and all measures which would facilitate its accomplishment, would not be in conflict with the above provision of the Constitution." *City of Grand Rapids* v. *Judge of Superior Court of Grand Rapids*, 93 Mich. 469 (53 N. W. 620).

The case of *Callaghan* v. *Judge of Superior Court of Detroit*, 59 Mich. 610 (26 N. W. 806), is quite similar to the present case. It is there said:

"The Constitution has made the title the index to the legislative intent as to what shall have operation. It is

no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so."

See, also, *City of Lansing* v. *Board of State Auditors*, 111 Mich. 327 (69 N. W. 723); *People* v. *Gadway*, 61 Mich. 285 (28 N. W. 101, 1 Am. St. Rep. 578).

Is a title to amend one section of the law a general or restricted title? No better illustration can be found than this case affords. Is the title to amend section 2 of chapter 4, being one of 692 sections, and the chapter being one of 37 chapters, of the charter, covering all the manifold and separate departments of the government of a large city, as broad as a title "to amend the charter of the city of Detroit?" or "to revise the charter of the city of Detroit?" or "to repeal the charter of the city of Detroit, and substitute a new charter in its stead?" Does "A bill to amend section 11538 of chapter 320 of the Compiled Laws" mean the same as "A bill to amend chapter 320 of the Compiled Laws, entitled 'Of Offenses against Property,'" and throw open for amendment or repeal every section of that chapter defining other crimes? Does a bill entitled "A bill to amend section 4226 of chapter 101 of the Compiled Laws" mean the same thing as "A bill to amend chapter 101 of the Compiled Laws, entitled 'The Construction of Roads and Bridges?'" Does "A bill to amend section 3886 of chapter 98 of the Compiled Laws" mean the same thing as "A bill to amend chapter 98 of the Compiled Laws, entitled 'Assessment, Levy, and Collection of Taxes,'" and throw open the entire tax law for amendment, revision, or repeal? Do these titles mean one and the same thing? Are they both general titles? If these questions must be answered in the affirmative, then I do not comprehend the meaning of the words "general" and "restricted." I cannot understand the logic by which a bill to amend specifically can be turned into a bill to amend generally. Speaking for myself, I do not hesitate to say that, if any case in this court has gone

so far as now is claimed in behalf of respondents, it ought promptly to be overruled. I cannot conceive a more palpable or more dangerous evasion of this wise provision of the Constitution than that for which the approval of the court is now asked. Its approval would open wide the door which the Constitution closed. What object was expressed in the title to the original bill, if it was not to make some amendment germane to the only section referred to in the title? Is there anything in the title to show any other object? What, under respondents' contention, becomes of the presumption, to which certainly every citizen is entitled, that the body of the act is germane to the object expressed in the title? Is the sole information conveyed by a title to amend one section notice that in some manner the charter itself is to be amended, and that, too, without any regard to the section named in the title? What is there, I ask, in such a title to give notice that a charter or general law is to be amended generally? The answer is, and must be, nothing. It cannot be held otherwise without running counter to the plain meaning of language. It seems to me unreasonable to say that a bill to amend one section of a law, referring solely to one given subject, gives notice to the people of this State that the whole law is open to amendment. I think the language of the opinion in *People* v. *Commissioners of Highways of Town of Palatine*, 53 Barb. 70, is applicable here:

"The body of the bill expresses its object; the title of the bill disguises and conceals it. * * * It is a fraud upon the public; it is a fraud upon the Constitution."

The judgments of the court below should be reversed, and judgments entered in this court in accordance with this opinion.

The importance of the case, and the brief time allowed for considering it, are my excuse for so long an opinion.

MOORE, J., concurred with GRANT, J.