MISSOURI, K. & T. RY. CO. v. MEYER, State Auditor of Oklahoma.

(District Court, W. D. Oklahoma. January 25, 1913.)

No. 513.

**1.** TAXATION (§ 63*)—GROSS REVENUE TAX ON MINERALS—OKLAHOMA STATUTE—CONSTRUCTION.

Under Act Okl. May 26, 1908 (Laws 1907-08, c. 71, art. 2) §§ 2, 3, and section 6 as amended by Act March 27, 1909 (Laws 1909, c. 38, art. 2), Comp. Laws Okl. 1909, §§ 7702, 7703, 7706, which require every person or corporation engaged in the mining or production of coal, oil, gas, or ores to make quarterly reports of production and pay to the state a percentage tax on the "gross receipts from total production," a railroad company is not exempt from the tax on coal it mines because it does not sell the same but uses it in the operation of its road.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 147; Dec. Dig. § 63.*]

**2.** STATUTES (§ 121*)—TAXATION (§ 38*)—GROSS REVENUE TAX ON MINERALS—OKLAHOMA STATUTE—CONSTITUTIONALITY.

Act Okl. May 26, 1908 (Laws 1907-08, c. 71, art. 2) §§ 2, 3, and section 6 as amended by Act March 27, 1909 (Laws 1909, c. 38, art. 2), Comp. Laws Okl. 1909, §§ 7702, 7703, 7706, imposing a gross revenue tax on mineral production in the state, is not in violation of Const. Okl. art. 5, § 57, limiting acts to one subject expressed in the title, nor of article 10, § 19, requiring acts to specify the purpose of taxes thereby imposed.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 146, 173, 174; Dec. Dig. § 121;* Taxation, Cent. Dig. § 67; Dec. Dig. § 38.*]

**3.** COMMERCE (§ 72*)—GROSS REVENUE TAX ON MINERALS—OKLAHOMA STATUTE—VALIDITY.

Nor is such statute invalid as imposing a burden on interstate commerce as applied to coal mined by a railroad company and used in the operation of interstate trains.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 123–136; Dec. Dig. § 72.*]

**4.** TAXATION (§ 6*)—PROPERTY SUBJECT TO TAXATION—RAILROADS OPERATED UNDER FEDERAL GRANT.

That the lines of a railroad company were built and are operated under grants by Congress does not affect the right of the state to tax its property, where the tax does not interfere with the performance of any service to the government which may have been made a condition of the grants.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 18; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5.** TAXATION (§ 6*)—POWER OF STATE—TAX ON FEDERAL INSTRUMENTALITY— OKLAHOMA STATUTE.

The tax imposed by Act Okl. May 26, 1908 (Laws 1907–08, pp. 640, 641, c. 71, art. 2) §§ 2, 3, and section 6 as amended by Act March 27, 1909 (Laws 1909, c. 38, art. 2), Comp. Laws Okl. 1909, §§ 7702, 7703, 7706, on the "gross receipts of total production" of coal and other minerals in the state, in addition to ad valorem taxes on the property of the producers, is in effect a tax on the business of mining, and, as applied to lessees of coal lands of the Indian tribes under direct authority and regulation of the United States, is invalid as a burden on a federal instrumentality.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 18; Dec. Dig. § 6.*]

In Equity. Suit by the Missouri, Kansas & Texas Railway Company against Leo Meyer, State Auditor of the State of Oklahoma. On demurrer to bill and exceptions to answer. Decree for complainant.

Clifford L. Jackson, W. R. Allen, and M. D. Green, all of Muskogee, Okl., and C. G. Hornor, of Guthrie, Okl., for plaintiff.

Charles West, Atty. Gen., of Guthrie, Okl., for defendant.

COTTERAL, District Judge. This suit was brought by the railway company to obtain a decree enjoining the collection by the State Auditor of gross revenue taxes imposed upon receipts derived from its railway operations under the laws of the state found in sections 2 and 3 of the act of May 26, 1908, Session Laws 1907–08, pp. 640, 641, forming sections 7702 and 7703 of Snyder's Compiled Laws of 1909, and upon receipts from coal mined and produced by the company in the state, under section 6 of the same act, and under that section as amended by act of March 27, 1909 (Laws 1909, c. 38, art. 2), forming section 7706 of Snyder's Compiled Laws.

A general demurrer to the bill was heretofore overruled. The taxes upon the gross railway receipts are conceded to be invalid under the decision of the Supreme Court, in Meyer, Auditor, v. Wells Fargo & Co., 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445, and must be enjoined in the final decree. The remaining controversy involves the taxes claimed on receipts from coal production. Upon leave given, the defendant has demurred to a portion of the bill, and filed an answer to the residue, relative to that subject. The answer admits that the coal is not taxable "in place," but alleges that it becomes so on severance, and justifies the law as "a fair and reasonable method of establishing the property rights of plaintiff both in the severance and mining of such coal, and in the property rights so acquired and thus subjected to taxation," and not otherwise taxed, and denies the averment of the bill that all of plaintiff's property was assessed at full cash value. The case is now submitted on said demurrer and exceptions to the answer.

Section 6 of the act of May 26, 1908, requires every person, firm, or corporation engaged in the mining, or production, within the state, of coal or asphalt, or of ores, to file quarterly reports with the State Auditor, showing the location of each mine, or oil or gas well, the kind of product, the gross amount produced, actual cash value, and other information, and at the same time to pay to the State Treasurer

a gross revenue tax in addition to ad valorem taxes upon mining, oil, or gas property equal to 2 per centum of the gross receipts from the total production of coal therefrom, or one-half of 1 per centum for the total production of ores, etc.

The amended section, adopted March 27, 1909 (section 7706, Snyder's Compiled Laws), differs in changing the quarterly periods and fixing the tax on receipts from coal productions at one-half of 1 per centum. Further provisions of the section empower the Auditor to require additional information, examine books, etc., and compel the attendance of witnesses, and, in case of untrue or incorrect returns, ascertain the correct amount of gross receipts and compute the tax.

Section 7 of the former act (section 7707, Snyder's Compiled Laws) fixes the time of delinquency of the tax and penalties therefor, and, in case of failure of report, authorizes the Auditor to ascertain the amount and value of production, compute the tax, and add costs and penalties. Section 7a of the former act (section 7708, Snyder's Compiled Laws) authorizes a rebate of taxes when ores and minerals (not including coal) have been manufactured or refined in the state. Section 8 of the former act (section 7709, Snyder's Compiled Laws) provides for the collection of the tax by warrant. And section 7711 (Snyder's Compiled Laws), adopted March 27, 1909, provides that the funds be paid into the state treasury and credited to the general revenue fund of the state for the payment of the expenses of the state government.

The grounds of complaint mainly urged against these taxes are: (1) That the acts do not apply to coal production by the plaintiff, as it does not sell the coal, but uses it solely for its railway purposes. (2) That the acts are violative of section 57 of article 5, and section 19 of article 10, of the state Constitution. (3) That the tax is void as a burden upon interstate commerce. (4) That it is void because imposed upon rights and privileges conferred by the federal government.

[1] 1. With respect to the controversy as to the application of the law to coal mined and used by the railway company, no receipts being realized from sales, the rule of construction to be followed is that all the provisions relative to the matter should be harmonized and given effect if that may be done consistently with the evident legislative intent. The tax purports to be laid upon a per centum of the "gross receipts from the total production of coal," and from these words standing alone a meaning might be extracted that only taxation based upon sales was contemplated. But the tax is payable by all persons engaged in the mining or production of coal, etc., and not in selling it. A sworn return is exacted showing the location of the mine or well, the kind, the gross production, actual cash value, and other information, and while the Auditor is, under the same section, authorized to ascertain the gross receipts and compute the tax, the next section empowers him to ascertain the amount and value of production, compute the tax, etc. And section 7708, in providing for a rebate of taxes when asphalt, ores, or petroleum, or other mineral, have been manufactured or refined, contemplates a tax irrespective of sale of the natural product and not dependent on the sale after it has been manu-

factured or refined. The intent, from the several provisions taken together, seems therefore manifest to provide for the collection of a tax, whether the mineral is put on the market, or used by the producer, and by the expression "gross receipts from total production" to refer to equivalents in either case, and accomplish the object of obtaining revenues from all production of mineral, regardless of use. This conclusion appears to be necessary, notwithstanding the conceded principles that taxes must be imposed by law, and that the law should be construed favorably to the taxpayer and not extended by implication beyond its clear intent.

[2] 2. Section 57 of article 5 of the state Constitution limits legislative enactments to one subject expressed in the title, with certain exceptions, and requires amendments to be re-enacted and published at length, etc. In the case of Binion v. Oklahoma Gas & Electric Co., 28 Okl. 356, 114 Pac. 1096, the Supreme Court of the state expressly decided that both the acts of 1908 and 1909 here involved were in accord with that section; and by uniform authority the construction of the Constitution of a state by the Supreme Court thereof is controlling in this court.

Section 19 of article 10 of the state Constitution requires legislative acts to specify distinctly the purpose of taxes thereby levied, etc. In the case of Binion v. Oklahoma Gas & Electric Co., supra, it was said that, conceding the former act did not meet the requirements of section 19 of article 10, it seemed to have been permissible to cure the act by amendment. It was added, however, that it was not essential to determine whether the act in question was in violation of that section. But in the case of McGannon v. State (Okl.) 124 Pac. 1063, involving the act of May 26, 1908, imposing a tax upon inheritances, it was said by the state Supreme Court, of section 19 of article 10 of the Constitution, that "it is intended to apply only to annually recurring taxes imposed generally upon the entire property of the state and not the kind of tax we are dealing with, which is a special tax," and cases were quoted from applicable to the subject. The taxes here involved cannot be classified as "annually recurring" or "imposed generally upon the entire property of the state." They are dependent upon the discovery and production of mineral in particular localities, and for this reason the above section of the Constitution cannot be held to detract from the validity of the acts imposing them.

[3] 3. The contention that this tax constitutes a burden on interstate commerce thus invalidating it cannot be sustained. It is alleged that the plaintiff is an interstate carrier of goods, passengers, and the mails, and that the coal is used in the interstate railway operations of the company. But the tax does not purport to be a charge upon transportation, or the receipts therefrom, and it is not seen how it is open to objection on the ground of interference therewith. In the case of Postal Cable Co. v. Adams, 155 U. S. 688, 15 Sup. Ct. 268, 360, 39 L. Ed. 311, it was said:

"It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on

interstate commerce * * * and cannot be sustained. But property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a state, and may take the form of a tax for the privilege of exercising its franchise within the state * * *· (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes. The corporation is thus ' made to bear its proper proportion of the burdens of the government under whose protection it conducts its operations, while interstate commerce is not itself subject to restraint or impediment."

And in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, it was said:

"We are aware of no decision by this court holding that a state may, by any device or in any way, whether by a license tax, in the form of a 'fee,' or otherwise, burden the interstate business of a corporation of another state, although the state may tax the corporation's property regularly or permanently within its limits, where the ascertainment of the amount assessed is made dependent in fact on the value of its property situated within the state.'"

The coal produced from mines by the plaintiff first has its situs, and the production occurs, wholly within the state. If the tax should be regarded as levied upon property, it would not be objectionable on account of its use in interstate commerce. But if it was levied upon the production of the coal, it cannot be held invalid as a restraint or burden upon interstate commerce, because it attaches in advance of any use of the coal in such commerce, and it is too indirect in its effect thereon. Pennsylvania R. R. Co. v. Knight, 192 U. S. 21, 24 Sup. Ct. 202, 48 L. Ed. 325; Williams v. City of Talladega, 226 U. S. 404, 33 Sup. Ct. 116, 57 L. Ed. ——, decided December 23, 1912; Thomas v. Gay, 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740.

[4] 4. The objection that the tax is improperly laid upon rights and privileges conferred by the federal government is based on its effect upon grants of Congress to construct and operate railway lines, and upon certain leases for obtaining coal from the lands of Indian tribes. In addition to the averment that plaintiff is a carrier engaged in both intrastate and interstate commerce, with lines established under congressional acts before the adoption of the statehood Enabling Act, the bill. alleges that the plaintiff has leases of coal mines upon segregated and unallotted lands owned by the Choctaw and Chickasaw Nations, executed by them and in their behalf and approved by the Secretary of the Interior under the act of June 28, 1898, c. 517, ·30 Stat. 498, from which mines the plaintiff produces coal for its railway uses, and for which it pays royalties for the use and benefit of the tribes, and that the mining of the coal is conducted under acts of Congress and the supervision and direction of the Secretary of the Interior in accordance therewith.

Exemption from taxation of railway property or business within a state cannot be upheld on the ground that the lines have been constructed and are operated under grants contained in acts of Congress and accepted by the companies. The power of the state to tax is understood not to be affected in such cases, provided the tax be not

imposed upon or designed to terminate the service to be rendered the government in the way of transportation, etc., inserted as a condition or requirement in these grants. But this tax is not laid upon transportation service in any way, and its relation to such service to the government is so remote that the objections on that ground are without merit. Williams v. City of Talladega, supra; Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067.

[5] But the tax has a closer relation to the rights conferred by the leases of these coal mines, concededly a federal agency designed and put in execution by the government in pursuance of its constitutional power to deal with Indian tribes. The state's power of taxation is broad and complete and extends to all classes of property and occupations, and would not be open to objection because exerted upon this coal as property, or the right to mine it, unless it would thereby hinder or defeat the means employed by the government in carrying out its policy towards the Indians, in which case it would yield validity in favor of the superior power. U. S. v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; U. S. v. Thurston County, 143 Fed. 287, 74 C. C. A. 425. If this tax were an ad valorem tax upon the coal produced from the mines, it would be valid because the exemption adhering to it in the mines would terminate on its removal, upon the general principle that taxation of property is valid after the status which exempts it no longer exists. But it is evidently not an ad valorem tax, as it is in terms imposed in addition to such taxes, and it is subject to the same comment in respect of its character as that upon gross railway receipts defined in the Meyer-Fargo Case, supra. If it is not a property tax, its classification would appear to fall within section 12 of article 10 of the state Constitution, authorizing the levy and collection of license, franchise, gross revenue, excise, and other special taxes. The following portion of the opinion of the state Supreme Court in the case of Binion v. Oklahoma Gas & Electric Co., supra, with reference to the application of section 19 of article 10 of the Constitution, is strongly indicative of the view of that court as to the nature of the tax:

"The Court of Appeals of Kentucky, however, in construing a similar constitutional provision, held that it did not apply to franchise taxes. Brown-Foreman Co. v. Com., 125 Ky. 402, 101 S. W. 321, 30 Ky. Law Rep. 793. As to whether the reasons that existed in Kentucky by which the Court of Appeals was induced to reach that conclusion would apply or have any persuasive force in this state, we do not now determine."

The language of the acts under consideration is that the tax is to be equal to a per centum of the "gross receipts from total production," and both ad valorem and franchise taxes are authorized by the Constitution. The construction therefore seems well fortified that the tax was intended to be laid upon the pursuit of mining. In that light it should be tested in its effect upon the federal agency embodied in the system of leasing the mines. If the tax be sustained, it seems clear it might be extended by legislation to the limit of depriving the leases of all value, and of frustrating the exercise of the federal pow-

er. The question is doubtless whether the tax is sufficiently direct in its bearing upon the leases to bring it into conflict with such agency.

In the case of Thomas v. Gay, 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740, taxes upon cattle grazed upon an Indian reservation in Oklahoma territory were upheld. It was argued that the taxes might impair or destroy the value of the lands for grazing purposes, but it was held to be obvious "that a tax upon the cattle of the lessees is too remote and indirect to be deemed a tax upon the lands or privileges of the Indians." It was also held that the tax was not an interference with the constitutional power of Congress to regulate commerce with the Indian tribes, but it was said:

"The taxes in question here were not imposed on the business of grazing, or on the rents received, by the Indians, but on the cattle as property of the lessees, and, as we have heretofore said that as such a tax is too remote and indirect to be deemed a tax or burden on interstate commerce, so it is too remote and indirect to be regarded as an interference with the legislative power of Congress."

This language is taken to indicate the view that a tax was not permissible upon the business of grazing. Here the tax based upon receipts from production of coal has been found to be virtually upon the business of producing it. A consideration of the character and effect of the tax in the case of the plaintiff leads to the conclusion that it so directly bears upon the leases and the rights conferred thereby that it should be declared invalid as a burden upon an instrumentality of the federal government.

The demurrer to the bill in part challenges the averments thereof which raise the question just decided, and the result is it must therefore be overruled. The answer does not raise any different question in asserting that the tax is laid on property rights. Nor does it contain relevant matter in alleging that plaintiff's other property is not fully taxed. If it be assumed that there was any failure of such assessment, it would not under the law aid or support the tax here involved. The exceptions to the answer are well taken, and will be sustained.

A final decree will be entered perpetually enjoining the collection or enforcement of the taxes involved in the suit, and the costs will be taxed to the defendant.